191 N.J. Super. 236 (1982)
466 A.2d 83
MARVIN F. MATLACK, PLAINTIFF,
v.
BOARD OF CHOSEN FREEHOLDERS OF THE COUNTY OF BURLINGTON, MICHAEL J. CONDA, DIRECTOR; BURLINGTON COUNTY CONSERVATION EASEMENT AND PINELANDS DEVELOPMENT CREDIT EXCHANGE, A/K/A BURLINGTON COUNTY CONSERVATION EASEMENT AND PINELANDS DEVELOPMENT CREDIT EXCHANGE BOARD, THEODORE GORDON, CHAIRMAN; ARTHUR J. COLLINS, III, BURLINGTON COUNTY TREASURER/COMPTROLLER, DEFENDANTS, AND NEW JERSEY CONSERVATION FOUNDATION, INC. AND ENVIRONMENTAL DEFENSE FUND, INC., DEFENDANTS-INTERVENORS. JOHN W. STORY AND JUNE G. STORY, PLAINTIFFS,
v.
BURLINGTON COUNTY BOARD OF CHOSEN FREEHOLDERS; BURLINGTON COUNTY CONSERVATION EASEMENT AND PINELANDS DEVELOPMENT CREDIT EXCHANGE BOARD; ARTHUR J. COLLINS, III, BURLINGTON COUNTY TREASURER/COMPTROLLER, DEFENDANTS, AND NEW JERSEY CONSERVATION FOUNDATION, INC. AND ENVIRONMENTAL DEFENSE FUND, INC., DEFENDANTS-INTERVENORS.
Superior Court of New Jersey, Law Division Burlington County.
Decided December 6, 1982.
*241 Joseph W. Marshall, III, and Myrna P. Field, members of the Pennsylvania bar, for plaintiff Marvin F. Matlack (John W. Beasley, Jr., O'Byrne & Beasley, attorneys).
Anton Muschal, Assistant Burlington County Counsel, for defendants Board of Chosen Freeholders of the County of Burlington, Michael J. Conda and Arthur J. Collins III (John E. Dimon, Burlington County Counsel, attorney).
M. Jefferson Davis for defendants Burlington County Conservation Easement and Pinelands Development Credit Exchange, Burlington County Conservation Easement and Pinelands Development Credit Exchange Board and Theodore Gordon (Reiners & Davis, attorneys).
James T.B. Tripp, member of the New York bar, for defendant-intervenors New Jersey Conservation Foundation, Inc. and Environmental Defense Fund, Inc. (James E. Collins, Cerrato, O'Connor, Mehr & Saher, attorneys).
Eileen B. White, a member of the District of Columbia bar, and Thomas E. Hookano, member of the California bar, for plaintiffs John W. Story and June G. Story (Bonnie Goldman, Jeffrey Goldman, attorneys).
*242 Mary C. Jacobson, Deputy Attorney General, for amicus curiae Pinelands Council (Irwin I. Kimmelman, Attorney General of New Jersey, attorney).
GOTTLIEB, J.J.D.R.C. (temporarily assigned).
These two matters have been consolidated for hearing. They each challenge, but not for totally identical reasons, the ability of defendants to participate in the purchase, creation of a market for and sale of Pineland Development Credits ("PDC"). The parties have all moved for summary judgment. A recitation of the legislative background and facts in these cases is appropriate to supply the context for this decision.
In May 1978 defendant Burlington County Board of Chosen Freeholders adopted a bond ordinance in the sum of $2,000,000 for the purpose of financing "the acquisition of conservation easements in ecologically sensitive and critical areas of the Pinelands located in Burlington County."
Later that year the Pineland National Reserve, consisting of approximately one million acres, was established under § 502 of the National Parks and Recreation Act, 16 U.S.C.A. 471i(c). In doing so Congress found a national interest in protecting the resources and benefits of the Pinelands. 16 U.S.C.A. 471i(a)(2). Congress also sought to encourage cooperation among various governmental units in furthering that goal. 16 U.S.C.A. 471i(b)(5).
In 1979 the Pinelands Protection Act was enacted by the State Legislature. N.J.S.A. 13:18A-1 et seq. Among other things, the act established the Pinelands Commission, N.J.S.A. 13:18A-4, and directed that it prepare a comprehensive management plan ("CMP") for the Pinelands. N.J.S.A. 13:18A-8. The CMP was to include "a comprehensive statement of policies for planning and managing the development and use of land in the pinelands area" by:
(1) Consider[ing] and detail[ing] the application of a variety of land and water protection and management techniques, including but not limited to, ... acquisition *243 of conservation easements and other interest in land,... transfer of development rights, dedication of private lands for recreation or conservation purposes and any other appropriate method of land and water protection and management which will help meet the goals and carry out the policies of the management plan; [and]
(2) Includ[ing] a policy for the use of State and local police power responsibilities to the greatest extent practicable to regulate the use of land and water resources in a manner consistent with the purposes and provisions of this act and the Federal Act....
The CMP was drafted by the Pinelands Commission and approved by the appropriate officials by January 1981. N.J.S.A. 13:18A-10. As relevant, the CMP creates a development credit program to provide an alternative use to property owners in certain portions of the Pinelands:
The program allocates to landowners in these restricted area credits which can be purchased by landowners in growth areas and used to gain bonus residential densities. The credits thus provide a mechanism for landowners in the former areas to participate in any increase in development values which is realized in growth areas. [CMP at 210]
A landowner selling credits must "record a deed establishing a restriction which limits the future uses of his land to those allowed under the plan for the area in which the land is located." The credit program allocates credits at varying rates, depending upon whether it involves farmland or wetland and the district in which it is situate. The CMP also recommends the creation of a "bank" to facilitate the implementation of the credit program. The "bank" would function to buy or sell credits on the open market, provide loans to property owners with credits as security, guarantee loans made by other institutions based on credits as security, and supply public information to promote an understanding of the credit program. CMP at 212.
In discussing management techniques to protect land and water resources, the CMP notes the availability of acquiring conservation easements. In this regard, the CMP opines that "[e]asements may also be used to acquire development rights to prevent all development or to restrict the type of development which may take place." CMP at 214.
*244 The CMP also envisions that local governmental units will be the principal management entities for implementing the plan. CMP at 273.
In September 1981 the board of freeholders adopted a resolution which created defendant Burlington County Conservation Easement and Pinelands Development Credit Exchange (the "Exchange"). The resolution authorized the Exchange, in the name of the board of freeholders, to purchase PDCs at a purchase price of $10,000 per credit or fraction thereof, funded through the 1978 bond ordinance. The Exchange was to purchase PDCs for land within the county, and "[e]xceptions for PDC purchases outside of Burlington County may be considered when they are in the best interest of the public and the County." Acquisition of a PDC would require that there be "a recorded conservation easement which shall run in perpetuity" in the name of the board of freeholders. The board of freeholders was authorized to sell the PDCs in a public manner as provided by applicable statutes. The proceeds from any sale were to be used to buy additional PDCs or direct conservation easements.
In July 1982 the Exchange adopted a resolution proposing to acquire a development credit from Floyd R. Springer covering property in Bass River Township.
In August plaintiffs Marvin F. Matlack and Joseph W. and June G. Story, all residents and taxpayers in the county, instituted these actions seeking a declaration that the purchase of PDCs through the Exchange on behalf of the board of freeholders was illegal. Matlack contends that (1) the use of monies to acquire PDCs is not authorized by the bond ordinance; (2) the board of freeholders and the Exchange are not empowered to buy, sell or otherwise create a market for PDCs; (3) local government units have been preempted from acting with respect to PDCs by the State; (4) the creation of a PDC document and registration system, enabling the transfer of PDCs, violates applicable federal and state securities laws, and (5) the use of *245 bond ordinance monies to buy PDCs on land outside of the county, as authorized by the Exchange's resolution, is illegal.
The Storys assert that (1) the use of monies to acquire PDCs is not authorized by the bond ordinance; (2) the board of freeholders does not have the authority to create the Exchange or to empower it to buy, sell or create a market for PDCs; (3) the setting of a purchase price of $10,000 for a PDC is an arbitrary and capricious designation of value and that that amount denies due process and just compensation to a potential seller of a PDC, and (4) the use of bond ordinance monies to buy PDCs on land outside of the county, as authorized by the Exchange's resolution, is illegal.
On August 5, pursuant to Matlack's request, an order was issued requiring defendants to show cause why a preliminary injunction should not be entered preventing defendants from buying, selling or otherwise creating a market for PDCs. The order included a temporary restraint.
On September 24, the continued return date of the order, an order was allowed permitting (1) the Pinelands Commission to appear as amicus curiae; (2) New Jersey Conservation Foundation, Inc. and Environmental Defense Fund, Inc. to intervene as parties defendant; (3) the consolidation of the two matters for hearing, and (4) various attorneys to be admitted pro hac vice. In an attempt to expedite resolution of the issues by the court, the order also provided for (1) accelerated disclosure of information by defendants to plaintiffs relating to how the purchase price of $10,000 for a PDC was determined; (2) requiring the filing of cross-motions for summary judgment and establishing a time schedule for the submission of briefs; and (3) prohibiting the making of other motions without prior permission of the court. The temporary restraints on the purchase of PDCs were dissolved except as they applied to lands outside of the county, but were continued on the sale or creation of a market for PDCs. The court reasoned that since the board of freeholders obtained a conservation easement with each PDC, there was no *246 irreparable harm to be prevented. Additionally, except for the application of PDCs to land outside the county, the court could not say that the legal right underlying plaintiffs' claims were settled. Crowe v. DeGioia, 90 N.J. 126 (1982). Therefore, the Exchange was permitted to buy PDCs on behalf of the board of freeholders.
At the conclusion of the hearing on the order to show cause, the court held a case management conference at which all possible legal issues were identified that they might be asserted in the summary judgment motions. Three of those issues subsequently were abandoned by the parties. The court will now discuss and rule on each of the remaining points at issue.

I. LEGAL STANDING OF PLAINTIFFS
Defendants question the right of plaintiffs to bring these actions. The argument of defendants is really three-pronged. The first goes to the general legal ability of plaintiffs to attack the actions of the board of freeholders and the Exchange. The second pertains to the right of plaintiffs to question defendants' asserted violation of applicable securities laws. The third attacks the status of the Storys in contending that the $10,000 purchase price for a PDC is violative of due process and just compensation rights.

A. General Standing of Plaintiffs

Plaintiffs are each residents and taxpayers in the county. There is "a broad right in taxpayers and citizens of a municipality to seek review of local legislative action without proof of unique financial detriment to them." Kozesnik v. Montgomery Tp., 24 N.J. 154, 177 (1957). There is no reason to distinguish between residents of a county and of a municipality for purposes of standing. Plaintiffs have the right to question the actions of the board of freeholders and the Exchange.

*247 B. Standing to Question Violations of Securities Laws

The more serious impugning of Matlack's right to question the actions of the board of freeholders and the Exchange concerns his standing to challenge asserted violations of the securities laws. That challenge is based on four distinct statutory schemes: The Securities Act of 1933, 15 U.S.C.A. 77a et seq.; the Securities Exchange Act of 1934, 15 U.S.C.A. 78a et seq.; the Real Estate Syndication Offerings Law, N.J.S.A. 49:3-27 et seq., and the Uniform Securities Law (1967), N.J.S.A. 49:3-47 et seq.
Matlack does not allege that he is a purchaser of a security encompassed by the Securities Act of 1933. Since that act only authorizes a cause of action for purchasers, 15 U.S.C.A. 77l, he has no standing personally to allege its violation.
Matlack also has no direct legal right to assert a violation of the Securities Exchange Act of 1934. One's ability to so contend is limited to the exclusive jurisdiction of the various United States District Courts. 15 U.S.C.A. 78aa.
Nor does he have the categorical right to contend that there is a violation of the Real Estate Syndication Offerings Law. The right of remedy under that statutory plan resides solely in the Bureau of Securities. N.J.S.A. 49:3-41, 44 and 46.
Finally, under the Uniform Securities Law (1967), only the Chief of the Bureau of Securities has the right to request injunctive relief, N.J.S.A. 49:3-69(a), while those who violate the act are responsible civilly only to those who buy the security. N.J.S.A. 49:3-71(a).
Thus, it is evident that Matlack does not have the direct right to contend that the board of freeholders and the Exchange violated any of the named securities laws.

C. Standing to Question Purchase Price

As stated, the Storys contend that the setting of a purchase price of $10,000 for a PDC is an arbitrary and capricious designation of value and that the sum denies due process *248 and just compensation to a potential seller of a PDC. The court determines that the Storys have a standing to advocate the first position, but not the second.

(1) Standing to Assert Price as Arbitrary

In reflecting on the Storys' position that the established purchase price of $10,000 is arbitrary and capricious, in essence the claim is that the board of freeholders will be paying an excessive sum for a PDC. The court must assume that to be the case, since it is ruling on cross-motions for summary judgment. Under R. 4:46-2 the court can grant summary judgment only where there are no material facts at issue. The concept applies to determinations of standing as well as decisions on the ultimate issues presented in a matter. All factual questions must be resolved against allowing the relief. Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 75 (1954).
Taxpayers of a county have the right to question in court an allegedly wrongful expenditure of monies by their governing body. Nolan v. Fitzpatrick, 9 N.J. 477, 484 (1952). That right will be afforded the Storys in this action.

(2) Standing to Question Constitutional Violations

The Storys argue that paying $10,000 for a PDC will violate the seller's due process and just compensation rights under the Fifth and Fourteenth Amendments and N.J. Const. (1947), Art. I, pars. 1 and 20. In reality, they seek to assert the constitutional rights of others. This is not permitted. In re Quinlan, 70 N.J. 10, 34 (1976), cert. den. sub nom. Garger v. New Jersey, 429 U.S. 922, 97 S.Ct. 319, 50 L.Ed.2d 289 (1976). As stated in N.J. Chamber of Commerce v. N.J. Election Law Enforcem. Comm'n, 82 N.J. 57 (1980):
Entitlement to sue requires a sufficient stake and real adverseness with respect to the subject matter of the litigation. [Citation omitted]. A substantial likelihood of some harm visited upon the plaintiff in the event of an unfavorable decision is needed for purposes of standing. [at 67]
Here, the Storys are mere interlopers. They do not assert that they are potential sellers, or in a position to be so. *249 They advocate their standing solely on the general basis as citizens and taxpayers. As strangers, they have no right to assert another's constitutional rights.

II. TIMELINESS OF SUIT
As noted, the complaints in these cases were filed in August 1982. They challenge the propriety of the resolution creating the Exchange which was adopted by the board of freeholders in September 1981 and the resolution of the Exchange authorizing the purchase of a PDC which was adopted in July 1982. Clearly, the latter resolution falls within the 45-day limitation of R. 4:69-6(a), but the former does not. Nonetheless, under R. 4:69-6(c), the court is allowed to enlarge the time limitation "where it is manifest that the interest of justice so requires." The court believes that exceptional circumstances, Robbins v. Jersey City, 23 N.J. 229, 238 (1957), exist by reason of the significant public interests involved. Home Bldrs. League of So. Jer. v. Evesham Tp., 174 N.J. Super. 252, 256 (Law.Div. 1980). There are potential sellers and buyers of PDCs who deserve to have settled the questions raised in these cases. The public of Burlington County is entitled to know if the proceeds from a bond ordinance adopted by the board of freeholders are being expended as authorized. The board of freeholders and the Exchange should have resolved legal questions concerning the propriety of their actions. "Justice" connotes not only fairness and impartiality but also that which is in the general public interest. Settling all of these unresolved concerns is in the public interest. Accordingly, the court, in the interest of justice, enlarges the time period and permits plaintiffs to raise and have adjudicated the issues presented.

III. AUTHORIZATION OF PDCs BY THE BOND ORDINANCE
Plaintiffs submit that while the bond ordinance empowers the acquisition of conservation easements, it does not permit *250 the purchase of a PDC. The resolution of this position requires an analysis of the characteristics of conservation easements and PDCs.
The essential characteristic of a PDC is that it represents a right in the holder to develop land more densely than otherwise permitted. It becomes a viable collateral benefit with the acquisition of a permanent restriction on the use of land. CMP at 212. Section 5-403A of the CMP provides that a PDC exists for every privately-owned piece of land which is unencumbered by a use easement:
Except for land which is owned by a public agency on the effective date of this Plan or land which is subject to an easement limiting the use of land to non-residential uses, every parcel of land in the Preservation Area District, an Agricultural Production Area or a Special Agricultural Production Area shall have a use right known as "Pinelands Development Credits" that can be used to secure a density bonus for lands located in Regional Growth Areas. [CMP at 401, 402]
In interpreting this provision, the Pinelands Commission advised:
Absent a specific provision to the contrary, when the applicant acquires a conservation easement on a parcel which has Pinelands Development Credits at the time of acquisition, the applicant acquires these Pinelands Development Credits if the conservation easement, at a minimum, restricts the use of the land in perpetuity to those non-residential uses authorized by the Plan as of the date of the conveyance (Section 5-404). [Letter of Interpretation No. 54, May 6, 1981]
While the court is not bound by the Pinelands Commission's interpretation of § 5-403A, it is entitled to due deference. Cf. Helfrich v. Hamilton Tp., 182 N.J. Super. 365, 374 (App.Div. 1981). It is logical and reasonable to conclude that, without a contrary agreement, one who purchases a conservation easement restricting the use of land also obtains the PDCs attributable to that land. Thus, PDCs are normally incident to the obtaining of a conservation easement and accrue directly as a result of that acquisition. Obviously, in the case of the board of freeholders, it has made a policy decision that it wishes to purchase the PDCs with each conservation easement, and the court is bound by that judgment which is entrusted to the board of freeholders. "Courts will not substitute their judgment for that of a municipal *251 governing body in matters solely involving questions of judgment." Ott v. West New York, 92 N.J. Super. 184, 197 (Law Div. 1966).
A conservation easement is an interest or right which restricts the use of land by others. See N.J.S.A. 13:8A-12(b). It differs from PDCs in that the latter are dormant rights which do not become active unless a conservation easement is obtained. But once a conservation easement is purchased, the inert PDC is given vitality; it is no longer inchoate.
Is the board of freeholders empowered to acquire a PDC? The court concludes that this question must be answered in the affirmative. PDCs are as much incident to the acquisition of a conservation easement as trees are to the purchase of a wooded tract or crops are to farmland. So long as ownership of the right known as a PDC flows from acquisition of a conservation easement, the board of freeholders is authorized to obtain that right. N.J.S.A. 40A:12-4(a) expressly authorizes a county to acquire any interest in real property including easements.
But has the bond ordinance, which authorized the purchase of conservation easements, provided proper basis for also acquiring PDCs? Bond ordinances must "contain in substance [a statement] in brief and general terms sufficient for reasonable identification [of] the purpose or purposes for which the obligations are to be issued...." N.J.S.A. 40A:2-12(a). PDCs, being collateral to conservation easements, do not come alive absent the restriction contained in conservation easements; PDCs are wholly derivative from conservation easements. In order to have a viable PDC, a conservation easement must first be recorded. The bond ordinance advised clearly that its purpose was to finance "the acquisition of conservation easements in ecologically sensitive and critical areas of the Pinelands located in Burlington County." In asserting that this language precludes the board of freeholders from also obtaining the derivative PDC, the result would be an exaltation of form over substance. In advising the public of their purpose, bond ordinances *252 need not particularize every ramification, product or denouement in implementing that purpose. Dolan v. Tenafly, 75 N.J. 163, 171-2 (1977). By setting forth the objective of obtaining conservation easements, even though ownership of PDCs also accrues, the requirement of N.J.S.A. 40A:2-12(a) has been met. For without a conservation easement, there is no viable PDC. To deny flexibility to the board of freeholders  the concept of PDCs having been created by the Pinelands Commission after the enactment of the bond ordinance  would impose an unduly narrow view on the requirements of the statute, a position rejected in Dolan, supra:
This argument fails to recognize the need for sufficient flexibility in the fiscal mechanism to permit adaptation to conditions and circumstances discovered during the execution of a project. [at 172]
Therefore, the court determines that the bond ordinance authorizes the purchase of PDCs as incidental to and derivative from the acquisition of conservation easements. This conclusion, however, is not to be taken as indicative of an authorization to purchase secondary PDCs. It is only because PDCs are concomitant with the purchase of conservation easements that the court determines that their acquisition is authorized by the ordinance. But once having been activated and conveyed to an initial purchaser, the PDCs are separable from conservation easements and exist independently. Since a PDC is no longer integrally connected with the underlying conservation easement, its acquisition by the board of freeholders would not fall within the scope of the purpose set forth in the bond ordinance. The bond ordinance authorized the expenditure of funds to provide restrictions on land development to preserve its ecology. The purchase of secondary PDCs would not serve this end; the bond ordinance does not empower it.
Once having obtained a PDC, the board of freeholders may convey it so long as it is no longer needed for public use. N.J.S.A. 40A:12-13.

*253 IV. POWER OF COUNTY TO ACQUIRE AND SELL PDCs
Plaintiffs submit that the board of freeholders acted beyond its power in determining to purchase and sell PDCs and in creating the Exchange to carry out those tasks. These assertions are without merit. The court is mindful of N.J. Const. (1947), Art. IV, § VII, ¶ 11, which provides:
... [A]ny law concerning ... counties, shall be liberally construed in their favor. The powers of counties ... shall include not only those granted in express terms but also those of necessary or fair implication, or incident to the powers expressly conferred, or essential thereto, and not inconsistent with or prohibited by this Constitution or by law.
The court is also aware of N.J.S.A. 13:18A-29, which mandates a liberal construction of the Pinelands Protection Act in light of "[t]he object, design and purpose of this act being the protection of the pinelands area and the resources thereof...." The act directs the Pinelands Commission to develop and adopt a CMP which is to "[i]nclude a policy for the use of State and local police power responsibilities to the greatest extent practicable...." N.J.S.A. 13:18A-8(d)(2). The CMP created PDCs. The CMP advocates the lead role to be played by local government units in implementing the plan. CMP at 273. The Legislature intended that counties be able to act consistently with and in furtherance of the act and the CMP. There has been no suggestion that the board of freeholders has acted to the contrary, nor could there realistically be any such assertion. Once the CMP was adopted and approved by the appropriate public officials, it had and has the force of law. A "fair implication" of the directive to implement the CMP is the power to buy and sell PDCs.
Plaintiffs have not asserted that the board of freeholders, in deciding to exercise its authority to buy or sell PDCs, acted out of bad faith, with fraud, corruption or manifest oppression in mind or in a manner displaying a palpable abuse of discretion. See Viera v. Parsippany-Troy Hill Tp., 156 N.J. Super. 19, 22 (App.Div. 1977). They may believe that such action is imprudent, but their recourse is to the ballot box. So long as a policy decision is made by a local governmental unit to participate in a *254 function which it is empowered to do, the court is not the forum to pass upon the wisdom of that judgment, unless it is affirmatively shown to be unreasonable or arbitrary. Dock Watch Hollow Quarry Pit, Inc. v. Warren Tp., 142 N.J. Super. 103, 116 (App.Div. 1976), aff'd 74 N.J. 312 (1977). That proof has not been represented to be advanced here.
Although the court determined earlier that Matlack had no standing to directly contend the board of freeholders and the Exchange violated applicable securities legislation, Matlack does have the right to assert that such violations are indicative of ultra vires actions by these defendants, thus indirectly implicating those statutes. Acts are ultra vires not only when they are beyond the scope of the authority to act, Summer Cottagers' Ass'n v. Cape May, 19 N.J. 493, 504 (1955), but also when that power is exercised irregularly. Thus, a power available to a governmental unit which is executed in an illegal manner would be ultra vires. Any taxpayer and citizen of the governmental unit involved may question the authority of the governing body to act in an assertedly irregular manner.
In deciding the merit of this contention, the court must decide whether a PDC is a security encompassed within each of the four securities acts, for if it is not, then the purchase, sale or creation of a market for a PDC would not reflect adversely on defendants.
15 U.S.C.A. 77b(1) defines the term "security" as:
... [A]ny note, stock, treasury stock, bond, debenture, evidence of indebtedness, certificate of interest or participation in any profit sharing agreement, collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit for a security, fractional undivided interest in oil, gas, or other mineral rights, or, in general, any interest or instrument commonly known as a "security", or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing.
In analyzing whether a particular transaction involves a security, the decision must be grounded in the "economic reality" of the circumstances presented, disregarding form for substance. *255 Tcherepnin v. Knight, 389 U.S. 332, 336, 88 S.Ct. 548, 553, 19 L.Ed.2d 564 (1967). In making this judgment the test to be applied is "whether the scheme involves an investment of money in a common enterprise with profits to come solely from the efforts of others." S.E.C. v. W.J. Howey Co., 328 U.S. 293, 301, 66 S.Ct. 1100, 1104, 90 L.Ed. 1244 (1946). Using that standard, it is evident that PDCs are not securities under the act.
For the purpose of examining a PDC to discern whether it is a security, as noted earlier, the essential characteristic of a PDC is that it represents a right in the holder to develop land more densely than otherwise permitted. As such, a PDC is not symbolic of a venture for profit or based on "the entrepreneurial or managerial rights of others." United Housing Foundation, Inc. v. Forman, 421 U.S. 837, 852, 95 S.Ct. 2051, 2060, 44 L.Ed.2d 621 (1975). The person who acquires a PDC is not "attracted solely by the prospects of a return" on the investment, S.E.C. v. W.J. Howey Co., supra 328 U.S. at 300, 66 S.Ct. at 1103, but by the opportunity for increased usage of land. Thus, in United Housing Foundation, Inc. v. Forman, supra 421 U.S. at 858, 95 S.Ct. at 2063, acquisition of "stock" shares in a housing cooperative by prospective residents was held not to be within the scope of the act because the purchase was for personal use.
Further, the PDC's value is not dependent on the effort of others. Rather, its worth is within the personal control of the buyer; the buyer must rely on his own efforts to gain advantage from ownership.
Accordingly, the court concludes that PDCs are not securities within the scope of the Securities Act of 1933. Therefore, it cannot be said that defendants' involvement with PDCs would be illegal because their transfer would violate the act. Thus the action of the board of freeholders and the Exchange is not ultra vires.
As indicated earlier, determinations of violations of the Securities Exchange Act of 1934 exclusively reside within the jurisdiction of the United States District Court. By reason of 15 *256 U.S.C.A. 78aa, this court does not even have the jurisdictional ability to determine compliance by defendants with the act for the purpose of deciding whether the board of freeholders and the Exchange are acting in an ultra vires manner. Necessarily the grant of exclusive jurisdiction of violations and enforcement carries with it the sole right to judge whether conduct is violative of the act.
In reflecting upon the determination of the existence of a violation under the Real Estate Syndication Offerings Law as indicative of an ultra vires act, it is evident that PDCs are not "securities" under the law since the owner of a PDC has personal control over his investment. Cf. Maplewood Village Ten. Ass'n v. Maplewood Village, 116 N.J. Super. 372, 379 (Ch. Div. 1971). Were PDCs securities, they would be exempt from the provisions of the law because they were created by the Pinelands Commission, an agency of the State. N.J.S.A. 49:3-42. Because PDCs are not encompassed by the law, involvement in their transfer is not ultra vires.
Similar reasoning holds for asserted alleged violations of the Uniform Securities Law (1967). PDCs are exempted from the scope of the law under N.J.S.A. 49:3-50(a)(1) since they were created by an agency of the State.
Accordingly, the board of freeholders or the Exchange did not act ultra vires under applicable securities statutes.
It is also argued that the board of freeholders acted ultra vires in creating the Exchange to minister to the purchase and sale of conservation easements and PDCs. The establishment of the Exchange is not expressly authorized by any statute, nor does it necessarily have to exist so that the board of freeholders might fulfill its participatory function in buying conservation easements and PDCs. The resolution creating the Exchange empowers it to purchase PDCs "only in cases of economic hardship, the criteria of which shall be determined" by the Exchange's governing board. The resolution also permits the Exchange to waive the hardship requirement upon a three-quarter *257 vote of that governing board. This is improper. In essence, the board of freeholders has delegated to the Exchange the power to make policy judgments based on criteria created by the Exchange. As observed in Ridgefield Park Ed. Ass'n v. Ridgefield Park Bd. of Ed., 78 N.J. 144 (1978):
Our concern is with the very function of government. Both state and federal doctrines of substantive due process prohibit delegations of governmental policy-making power to private groups where a serious potential for self-serving action is created thereby. [citation omitted]. To be constitutionally sustainable, a delegation must be narrowly limited, reasonable and surrounded with stringent safeguards to protect against the possibility of arbitrary or self-serving action detrimental to third parties or the public good generally. [at 163-164]
The rules of conduct  to acquire or not, to decide the criteria for hardship (as basic legislative policy), to waive implementation of the hardship criteria in a particular situation  have been delegated improperly. Pascucci v. Vagott, 71 N.J. 40, 49 (1976). In essence, the Exchange not only ministers but it also exercises discretion and judgment which repose solely in the board of freeholders and cannot be assigned to another.
Indeed, the CMP, in recommending the creation of a "bank" for PDCs, does not establish any rules of conduct for its operation. Thus, even though local government units are to be the principal management entities in implementing the plan, there are no criteria which could be said to be superimposed on the Exchange's operation.
In this respect the action of the board of freeholders is ultra vires. If that body chooses to retain the ultimate power to make the necessary judgments, maintaining the Exchange in an advisory capacity, that may be done. But the board of freeholders may not relinquish those functions in a carte blanche manner.

V. PREEMPTION
Matlack contends that the right of the board of freeholders to deal in PDCs has been preempted by the Legislature and its agency, the Pinelands Commission. In determining the validity of that assertion the court must apply the three-part *258 test set forth in Dome Realty Inc. v. Paterson, 83 N.J. 212, 225-6 (1980): (1) "whether the State Constitution prohibits delegation of [local government] power on a particular subject because of the need for uniformity of regulation throughout the State"; (2) "whether the Legislature has in fact done so," and (3) "whether any delegation of power to [local government units] has been preempted by other State statutes dealing with the same subject matter."

A. Need for Statewide Uniformity

Even though the Pinelands occupy portions of only eight counties, the declaration of the Legislature that the protection of the area and its resources is in the interests of the people of this State, N.J.S.A. 13:18A-2, effectively evokes a legislative statement of the need for a uniform approach by all implicated governmental units. Similar language appears in 16 U.S.C.A. 471i(a)(2), indicating a national interest. Where there is a statewide interest in a uniform approach, even though it in reality can involve less than all of the governmental units in the State, for purposes of the Dome Realty test there is a need for statewide uniformity.

B. Prohibition of Delegation of Power

The State Constitution expressly authorizes local government units to acquire easements upon private property as may be needed for any public use. N.J. Const. (1947), Art. IV, § VI, par. 3. In judging what interest in land is needed in the public interest, local treatment is appropriate. Deciding whether public acquisition of conservation easements is appropriate and necessary is not the kind of judgment that requires uniformity by local government units. The right to make that judgment is not foreclosed because many local government units in the eight-county area of the Pinelands have the ability to make that decision. The determination of whether to acquire conservation easements in the Pinelands is one which is appropriate for local judgment.

*259 C. Legislative Delegation of Authority

In enacting the Pinelands Protection Act, the Legislature clearly made known its desire that local government units exercise their "police power responsibilities to the greatest extent practicable to regulate the use of land and water resources in a manner consistent with the purposes and provisions" of the act. Rather than precluding, the Legislature has chosen to encourage local government action consistent with the act and the CMP.

D. Existence of Other Indicators of Presumption

The third standard of Dome Realty is whether other state statutes evince a preemption.
In 1971 the Pinelands Environmental Council was created. N.J.S.A. 13:18-1. One of its functions was to "encourage and assist public and private agencies and persons to undertake projects and activities in accordance with the coordinating, comprehensive plan "for protection of the resources of the Pinelands." N.J.S.A. 13:18-3. That plan may include "recommendations for the establishment by the appropriate units of government of zoning and other land use and environmental control measures...." N.J.S.A. 13:18-9. That legislation  N.J.S.A. 13:18-1  patently countenanced local action, not local quiescence.
There is no other legislation on point. Accordingly, the court finds no preemption by the Legislature.

VI. ACQUISITION OF INTERESTS IN OUT-OF-COUNTY LAND
The bond ordinance authorizes the purchase of "conservation easements in ecologically sensitive and critical areas of the Pinelands located in Burlington County...." The resolution creating the Exchange permits their purchase for land outside of the county "when they are in the best interest of the public and the County." All parties have agreed that extra *260 county acquisitions do not fall within the contrary, expressed terms of the bond ordinance. The resolution seeking to expand the purpose of the ordinance is defective in this respect. The situation concerning the site of the land in which an interest is to be obtained has not changed since the bond ordinance was adopted. See Dolan v. Tenafly, supra 75 N.J. at 172. The resolution cannot alter so significantly the purpose of the bond ordinance. N.J.S.A. 40A:2-12. To that extent, the resolution is invalid.

VII. THE $10,000 PURCHASE PRICE
The resolution creating the Exchange also fixed the purchase price of a PDC at $10,000. The Storys assert that this is an arbitrary amount. While that determination by the board of freeholders carries with it a presumption of validity, Hutton Pk. Gardens v. West Orange, 68 N.J. 543, 564-56 (1975), that presumption is insufficient to preclude a litigant from presenting proofs to the contrary. Indeed, the affidavit of Terrence D. Moore, Executive Director of the Pinelands Commission, shows that an economic consultant to the Commission opined a range of values of a PDC between $4,000 and $30,000, based on development use. Although the $10,000 price certainly falls within those two extremes, the court cannot state as a matter of law that the purchase price is reasonable. This issue must remain for proofs at a hearing.
Accordingly, plaintiffs are granted partial summary judgment adjudicating that (1) the board of freeholders improperly delegated to the Exchange discretion in purchasing PDCs and (2) the board of freeholders illegally authorized the use of proceeds from the bond ordinance for purchases of land outside the county. The board of freeholders and the Exchange are permanently enjoined from such activity.
Defendants are granted partial summary judgment declaring that (1) PDCs may be purchased under the bond ordinance; (2) the board of freeholders may acquire and sell PDCs and (3) the *261 board of freeholders is not preempted by the State from buying, selling or creating a market for PDCs.
Finally, the motions for summary judgment as to the arbitrariness of the $10,000 PDC purchase price is denied.