[Nos. 15950–0–I; 17758–3–I.   Division One.   August 20, 1986.]

INTERLAKE PORSCHE + AUDI, INC., *Appellant,* v. TERRY BUCHOLZ, ET AL, *Appellants,* EDWARD M. BLACKBURN, JR., ET AL, *Respondents.*

EDWARD M. BLACKBURN, JR., *Respondent,* v. TERRY M. BUCHOLZ, ET AL, *Appellants.*

504

*David A. Best, Joe E. Wishcamper,* and *Inslee, Best, Chapin & Doezie,* for appellant Interlake Porsche.

*Bruce A. Wolf, George Kargianis,* and *Kargianis & Austin,* for appellants Bucholz.

*John M. Woodley* and *Woodley & Thurston,* for respondents.

SWANSON, J.—This is a consolidated case. Edward M. Blackburn, Jr., a minority shareholder of Interlake Porsche + Audi, Inc. (IPA), a closely held Washington corporation, brought two lawsuits. One was against IPA and Terry M. Bucholz, IPA's majority shareholder, for injunctive and declaratory relief and the second was a shareholder deriva-

tive suit on IPA's behalf against Bucholz and his wife for amounts allegedly owed to IPA. In the second action Blackburn intervened as a plaintiff on behalf of himself and other similarly situated IPA shareholders.

Bucholz and his marital community appeal the portion of the superior court judgment against them which awarded $566,279[1] in damages to Blackburn on behalf of himself and the other IPA shareholders, and they and IPA appeal the $91,452 attorney fee and cost award to Blackburn. IPA further appeals the superior court order denying its motion for indemnification from Bucholz and his marital community for any attorney fees and costs it must pay Blackburn. Blackburn cross–appeals from the judgment on grounds of error in the trial court's denial of judgment against Bucholz for allegedly improper salary increases and for an alleged failure to disclose a corporate business opportunity.[2]

The trial court's findings may be summarized as follows. IPA, a Bellevue, Washington, Porsche and Audi dealer, was formed in 1973 with Bucholz owning 51 percent of the shares; Blackburn, 39 percent; and Rudolph E. Kreybig, 10 percent. The three shareholders were directors, and Bucholz was the chief operating officer, Kreybig was sales manager, and Blackburn, a consultant.

In 1975 the dealership had the opportunity to purchase for $720,000 the real property upon which it is located, but Bucholz was unable to obtain financing at the time, and in 1984 the property was bought for $1,200,000. In March 1979, Bucholz sold a dealer–owned Porsche 906 for $40,000, of which he paid the corporation $6,500.

From 1973 until about 1979, Bucholz did a remarkable

---

[1] In light of our disposition of the issues raised in this appeal, Blackburn's request pursuant to RAP 7.2(e) and 1.2 to correct a clerical mistake in the judgment amount is moot.

[2] Upon Blackburn's and Bucholz's cross motions to strike portions of the other party's reply brief, we have determined that the relevant portions of the parties' reply briefs will not be considered to the extent of their noncompliance with the Rules of Appellate Procedure.

job managing the dealership, and the shareholders obtained a substantial return on their investments. However, in 1979 or 1980, unknown to Blackburn and Kreybig, Bucholz began spending substantial corporate funds on personal expenditures, some of which were later charged to him personally and some of which were not. As general manager, Bucholz had access to the corporation's bank accounts, was responsible for its recordkeeping, and approved all payments and signed all checks when he was at the dealership. In August 1982, when the minority shareholders were finally able to obtain access to the corporate records to ascertain IPA's financial condition, Blackburn discovered Bucholz's personal use of corporate funds.

At corporate meetings in fall 1982, dividends were discussed but not paid. In March 1983, a new board of directors was elected comprised of Bucholz, Blackburn, and Bucholz's nominee, Harry Gamble, and the board thereafter, over Blackburn's objections and with no shareholder approval, passed a resolution allowing the personal use of corporate funds contingent upon 30 days' repayment.[3] In June 1983, Bucholz discharged Kreybig as an employee and attempted to buy his stock at that time.

At board of directors meetings in fall 1983 and December 1984, dividends were discussed but not authorized and no compensation was provided to Blackburn or Kreybig. At the fall 1983 meeting Bucholz was voted, over Blackburn's objections, a retroactive 1983 salary increase from $36,000 to $97,500 and a 1984 salary plus bonus of $137,000, based upon the corporate accountant's recommendation. After the corporation refused to bring an action against Bucholz, Blackburn brought a derivative action on IPA's behalf. Bucholz used corporate funds to pay his and his wife's legal defense fees of $27,982, in violation of RCW 23A.08.025.

Upon the entry of judgment, Bucholz and IPA appeal, and Blackburn cross–appeals. A supersedeas bond was

---

[3]The trial court's judgment ordered Blackburn and Bucholz to repay their 1804/1304 accounts with interest by April 1, 1985.

filed, and the trial court order requiring IPA's forced dissolution by December 31, 1985 was stayed. Bucholz's request for a stay of the IPA board of directors' determination that removed him from his position as IPA's president and general manager was denied by the Court of Appeals, and the State Supreme Court refused to grant discretionary review of the denial. A trial court order, which IPA appeals, was entered denying IPA's request for indemnification from Bucholz for the attorney fee judgment in Blackburn's favor.

The principal issues that have been raised are as follows:

1. Did the trial court abuse its discretion in concluding that Bucholz's breach of his fiduciary duty damaged the corporation in the amount of $534,797?

2. Did the trial court err in determining that Blackburn had been injured by Bucholz's alleged Washington securities act violation?

3. Did the applicable statute of limitations bar recovery of the Porsche 906 sale proceeds?

4. Were Bucholz's salary increases improper?

5. Did the trial court err in awarding judgment to Blackburn on behalf of himself and the other IPA shareholders rather than to the corporation?

6. Was the attorney fee award in Blackburn's favor and against IPA and Bucholz and his marital community an abuse of discretion?

7. Did the trial court abuse its discretion in ordering the corporation's dissolution?

## BREACH OF FIDUCIARY DUTY

Blackburn recovered damages on behalf of himself and the other IPA shareholders for Bucholz's breach of his fiduciary duty as an IPA director, officer, and controlling shareholder in using corporate funds and assets for his personal benefit. The issue here is whether the trial court abused its discretion in determining that the damage to the corporation stemming from Bucholz's breach of his fiduciary duty amounted to $534,797.

In his appeal of the damage award Bucholz assigns error

to the following findings of fact and conclusion of law:

8. [T]he court limited the financial records introduced in evidence to the period commencing about 1980, but finds for the period 1980 through September of 1984, a total of $534,797 was expended for such expenses as customer relations, demo expense, sales promotion, company vehicle expense, travel and entertainment, membership and dues, and owner's life insurance. In these categories were substantial expenditures for Mr. Bucholz's personal benefit. In addition, there was evidence of substantial use or appropriation of corporate assets solely for the benefit of Mr. Bucholz and his family.

Finding of fact 8 (in pertinent part).

9. Financial records provided in pretrial discovery pursuant to an all–encompassing request for production of documents and introduced into evidence indicated only $169,000 of expenditures having any backup documentation which could be used to ascertain whether the expense had a legitimate business purpose. Backup documentation was not kept in a manner as required for business records to be kept in order for a determination to be made as to whether an expenditure was a legitimate business expenditure or a personal expenditure of Mr. Bucholz. The backup documentation did not state the purpose, persons involved, and business reason for the expenditure. Mr. Bucholz was the maker and custodian of the corporation's business records. Mr. Bucholz, by virtue of his position with the corporation and having breached his fiduciary duty, had a burden to prove the legitimate nature of the expenditures, which he did not do.

Finding of fact 9.

1. Mr. Bucholz has breached the fiduciary duty he owes to the corporation and its minority shareholders. Damage to the corporation caused by Mr. Bucholz's breach is in the sum of $534,797.

Conclusion of law 1.

Directors and officers stand in a fiduciary relation to the corporation they serve and are not permitted to retain any personal profit or advantage gleaned "on the side." *Leppaluoto v. Eggleston,* 57 Wn.2d 393, 402, 357 P.2d 725

(1960). The "business judgment" rule immunizes management from liability in a corporate transaction undertaken within the corporation's power and management's authority where a reasonable basis exists to indicate that the transaction was made in good faith. Such immunity from liability is absent where a corporate director or officer is shown to have acted in bad faith and with a corrupt motive. *Nursing Home Bldg. Corp. v. DeHart,* 13 Wn. App. 489, 498–99, 535 P.2d 137, *review denied,* 86 Wn.2d 1005 (1975).

In a shareholder derivative action the plaintiff bears the burden of proving (1) a breach of fiduciary duty to the corporation and (2) the breach was the proximate cause of the losses sustained. *Leppaluoto v. Eggleston, supra* at 403; *Smith v. Pacific Pools, Inc.,* 12 Wn. App. 578, 581, 530 P.2d 658, *review denied,* 85 Wn.2d 1016 (1975).

Here the unchallenged finding of fact 7 indicates in pertinent part that Bucholz expended corporate funds for his personal use without the board of directors' approval or the other shareholders' ratification of such expenditures:

> Mr. Bucholz treated the corporation and the corporate assets as his own and in that regard apparently forgot he had minority shareholders who also had rights in the corporation. Mr. Bucholz's expenditures of corporate funds for personal use was not discussed with the minority shareholders prior to the company's funds being expended, nor was a resolution presented to the board of directors or other board action taken. Moreover, no shareholder action was sought by Mr. Bucholz or taken. The same can be said of the use of corporate funds for personal use which were charged to the corporation. Mr. Bucholz, by virtue of his position as general manager, had the power to make very large expenditures of corporate funds for his own personal benefit because he had access to the bank accounts of the corporation. Mr. Bucholz also was responsible for the record keeping of the corporation. Mr. Bucholz opened all mail, approved all payments, and signed all checks when he was present at the dealership.

Thus, the trial court's uncontested finding is that Bucholz made unauthorized personal use of corporate funds.

Once the breach of a fiduciary duty has been established, the plaintiff must prove the damage resulting from the breach. *Smith v. Pacific Pools, Inc., supra; see Leppaluoto v. Eggleston, supra* at 405. The precise amount of damages need not be shown with mathematical certainty. *Haner v. Quincy Farm Chems., Inc.,* 29 Wn. App. 93, 97, 627 P.2d 571 (1981), *aff'd,* 97 Wn.2d 753, 649 P.2d 828 (1982). Damages must be supported by competent evidence in the record, *Hyde v. Wellpinit Sch. Dist. 49,* 32 Wn. App. 465, 470, 648 P.2d 892 (1982); however, evidence of damage is sufficient if it affords a reasonable basis for estimating the loss and does not subject the trier of fact to mere speculation or conjecture. *Haner v. Quincy Farm Chems., Inc., supra* at 98. Where damages cannot be ascertained with precision, the trial court must exercise its sound discretion. *Barnard v. Compugraphic Corp.,* 35 Wn. App. 414, 418, 667 P.2d 117 (1983); *see Holland v. Boeing Co.,* 90 Wn.2d 384, 393, 583 P.2d 621 (1978).

In determining the amount of damages, the trial court found that $534,797 in corporate funds had been used for certain expenses during the pertinent period and that of this total, substantial expenditures were for Bucholz's personal benefit. The court then found that Bucholz, not having met what the court determined was his burden to prove the legitimate nature of these expenses, was liable to the corporation for the total amount of these corporate expenditures. Bucholz argues that he should be liable for only the corporate expenditures that were shown to have resulted from his breach of duty, *i.e.,* those that were used for his personal benefit.

Appellate review here is limited to determining whether the trial court's findings are supported by substantial evidence and, if so, whether the findings in turn support the court's conclusions of law and judgment. *Ridgeview Properties v. Starbuck,* 96 Wn.2d 716, 719, 638 P.2d 1231 (1982). This court may consider the trial court's oral opinion insofar as it is consistent with and amplifies its findings of fact. *Nelse Mortensen & Co. v. Group Health Coop.,* 17

Wn. App. 703, 720, 566 P.2d 560 (1977), *aff'd,* 90 Wn.2d 843, 586 P.2d 469 (1978).

Here the trial court in its oral opinion stated that it adopted the testimony of Robert Johnston, Blackburn's expert witness, as to evidence of "irregularities" in Bucholz's use of corporate assets and of the damage amount. When Blackburn's counsel stated that the amount of damages indicated in Johnston's testimony was "$534 minus 30 some odd thousand," the court replied, "They were all supported by Mr. Johnston's testimony." When Bucholz's counsel objected to the trial court's apparent reliance upon exhibit 86 in finding the damage amount, Blackburn's counsel conceded that exhibit 86 had been rejected for use in determining the damage amount but claimed that it merely summarized the total expenditures for the period, which expenditures were supported by the financial statements in the record.

Blackburn's counsel further conceded that the figure given in Johnston's testimony included legitimate business expenses and asserted that either he would negotiate the amount of damages with Bucholz's counsel or Bucholz's counsel could argue the amount when the proposed findings and conclusions of law were presented to the court. The findings and conclusions that were entered reflect no adjustment in the damage amount, and the record on appeal contains no verbatim transcript of the hearing when the findings and conclusions were presented.

The only trial court finding that addresses the amount of damages resulting from Bucholz's breach of his fiduciary duty states that of the total corporate expenditures of $534,797 during the pertinent period, "substantial expenditures" were for Bucholz's personal benefit and that evidence existed of "substantial use or appropriation" of corporate assets for Bucholz's benefit. This sole finding, particularly in light of Blackburn's counsel's concession that the $534,797 amount included legitimate business expenses, is inadequate to support the court's conclusion of law that Bucholz's breach caused damage to the corpora-

tion in the amount of $534,797. *Ridgeview Properties v. Starbuck, supra.*

Blackburn argues that the unsustained burden of proving the legitimate nature of the corporate expenditures during the given period was properly placed upon Bucholz since he was the corporation's sole record keeper and the records that he produced in pretrial discovery had not been kept in a proper business manner so that the business or personal nature of each expense could be ascertained.

Neither the mere fact of Bucholz's fiduciary relationship to IPA nor Blackburn's mere allegations of Bucholz's improper conduct shifted the burden to Bucholz to prove that the expenditures were made in good faith. *Nursing Home Bldg. Corp. v. DeHart, supra* at 498; *Smith v. Pacific Pools, Inc., supra.* However, where a transaction involves self–dealing or evidence of personal benefit is shown, then the burden shifts to the fiduciary to show good faith. *Bellis v. Thal,* 373 F. Supp. 120, 123–24 (E.D. Pa. 1974), *aff'd,* 510 F.2d 969 (3d Cir. 1975); *Wolf v. Fried,* 473 Pa. 26, 373 A.2d 734, 736 n.8 (1977).

Nevertheless, once a fiduciary's self–dealing or personal benefit in one transaction has been shown, the burden does not shift to the fiduciary to prove the fairness of all transactions complained of, regardless of whether any evidence has been presented that such transactions involved self–dealing or personal benefit.

> Such a holding would impose upon corporate fiduciaries a higher burden than the law requires and would expose corporate fiduciaries to liability many times in excess of the damage their own actions may have caused.

*Bellis v. Thal, supra* at 124. The duty of reimbursement is limited to those losses that were proximately caused by the fiduciary's misconduct. *Bellis v. Thal, supra.* Thus it was error to impose upon Bucholz the burden of proving the legitimate nature of all of the corporate expenditures during the given period, and Bucholz could be liable for only those expenditures of corporate funds that were shown to have been for his personal benefit. The trial court abused

its discretion in holding otherwise. *Holland v. Boeing Co., supra.*

In light of the failure of proof of the damage amount, the case must be remanded to the trial court for further proceedings to determine the amount of damages, including, if necessary, taking additional testimony or ordering an accounting[4] to determine which of the $534,797 in expenses were legitimate business expenses properly charged to the corporation and which were Bucholz's personal expenses for which he must reimburse the corporation.

## SECURITIES ACT VIOLATION

The next issue is whether the trial court erred in concluding that Blackburn had been injured by Bucholz's alleged violation of the Securities Act of Washington, RCW 21.20. Bucholz has assigned error to the following finding of fact and conclusion of law:

> 19. Attempts were made by Mr. Bucholz to purchase the minority stock interest without disclosure of financial information of the corporation or the valuation of the corporation done by the corporate accountant.

Finding of fact 19.

> 10. Mr. Bucholz, in the offers he made to Mr. Blackburn and Mr. Kreybig without full disclosure, is in violation of the state securities act and Mr. Blackburn has been damaged by the amount of attorney fees and costs incurred in this litigation. Mr. Blackburn shall have judgment against Mr. and Mrs. Bucholz and the marital community for the amount of reasonable attorney fees and costs incurred in this action.

Conclusion of law 10. Bucholz argues that a mere offer to purchase security in the absence of an actual purchase or sale will not support a civil liability action under former RCW 21.20.430.[5]

---

[4]Blackburn did not exercise his right to seek an accounting. *See Corbin v. Madison,* 12 Wn. App. 318, 327–28, 529 P.2d 1145 (1974), *review denied,* 85 Wn.2d 1005 (1975).

[5]RCW 21.20.430 was amended by Laws of 1985, ch. 171, § 1, p. 640, and Laws of 1986, ch. 304, § 1, p. 1352.

RCW 21.20.010,[6] unlike its federal counterpart, § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b),[7] proscribes the use of fraud or deception in the offer as well as the sale or purchase of any security. However, the plain language of RCW 21.20.430, the civil liability provision of the state securities act, appears to limit civil actions under the statute to persons injured by the actual purchase or sale of a security in violation of the statute. RCW 21.20-.430 states in pertinent part:

> (1) Any person, who offers or sells a security in violation of any provisions of RCW 21.20.010 or 21.20.140 through 21.20.230, is liable to the *person buying the security* from him or her, who may sue either at law or in equity . . .
> (2) Any person who buys a security in violation of the provisions of RCW 21.20.010 is liable to the *person selling the security* to him or her, who may sue either at law or in equity . . .

(Italics ours.) RCW 21.20.430(1), (2).

Under RCW 21.20.430(1) a purchaser of a security from a seller in violation of the statute may sue to recover either

---

[6]RCW 21.20.010 provides:

"It is unlawful for any person, in connection with the offer, sale or purchase of any security, directly or indirectly:

"(1) To employ any device, scheme, or artifice to defraud;

"(2) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or

"(3) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person."

[7]Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), states in pertinent part:

"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

". . .

"(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any *manipulative or deceptive device or contrivance in contravention of* such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."

the consideration (plus interest) paid for the security and reasonable attorney fees or damages, if the buyer no longer owns the security. Under RCW 21.20.430(2) the seller of a security to a buyer in violation of the statute may sue to recover either the security, upon tender of the consideration received, and attorney fees or damages, if the security cannot be recovered. Damages are to be computed according to formulas set forth in RCW 21.20.430(1) and (2).

In construing RCW 21.20.430(1)'s damage formula, a Washington court concluded that the thrust of Washington's securities statute is to afford compensation to a purchaser for any "actual loss" occasioned by the fraudulent or illegal sale. *Garretson v. Red–Co.,* 9 Wn. App. 923, 929, 516 P.2d 1039 (1973); *cf. Nelson v. Serwold,* 687 F.2d 278, 280 (9th Cir. 1982) (actual damages recoverable under federal securities law). The limitation of civil actions under former RCW 21.20.430 to defrauded securities buyers or sellers, not mere offerees, is thus in accord with the statutory purpose of permitting the recovery of actual damages.

Further, the Washington securities act's statutory policy section, RCW 21.20.900, provides:

> This chapter shall be so construed as to effectuate its general purpose to make uniform the law of those states which enact it and to coordinate the interpretation and administration of this chapter with the related federal regulation.

*Kittilson v. Ford,* 93 Wn.2d 223, 226–27, 608 P.2d 264 (1980). RCW 21.20.430's limitation of private claims for damages to only purchasers or sellers of securities is in coordination with the interpretation of the federal section 10(b) and rule 10b–5. *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 44 L. Ed. 2d 539, 95 S. Ct. 1917, 1934–35, *reh'g denied,* 423 U.S. 884 (1975); *Cowin v. Bresler,* 741 F.2d 410, 420 (D.C. Cir. 1984).

Similarly, this limitation is in uniformity with the law in other states which, like Washington, have adopted the Uniform Securities Act. *See, e.g., Financial Programs, Inc. v. Falcon Fin. Servs., Inc.,* 371 F. Supp. 770, 776 (D. Or.

1974); *Matlack v. Board of Chosen Freeholders,* 191 N.J. Super. 236, 466 A.2d 83, 89 (1982), *aff'd,* 194 N.J. Super. 359, 476 A.2d 1262, *cert. denied,* 99 N.J. 191 (1984). Since it is undisputed that no actual purchase or sale of securities occurred here, the conclusion that any violation of the state securities act by Bucholz gave rise to a civil liability action supporting an attorney fee award under RCW 21.20.430 was error.

## SALE PROCEEDS

Bucholz next contends that the corporation's recovery of the Porsche 906 sale proceeds is barred by the applicable 3–year statute of limitations. He assigns error to the following finding of fact and conclusion of law:

> 11. Up until August 1982, the minority shareholders were not able to ascertain the true nature of financial expenditures or the financial dealings of the corporation. However, in August of 1982, Blackburn and Kreybig finally obtained access to the corporate records and were able to ascertain the status of the financial condition of the corporation. It was at that time that Mr. Blackburn discovered the majority of the proceeds of the sale of the Porsche 906 had not been deposited in the corporate bank account. It was also at that time that Mr. Blackburn discovered the use of the corporate funds by Mr. Bucholz.

Finding of fact 11.

> 2. In addition, Mr. Bucholz should account to and pay the corporation $33,500 from the Porsche 906.

Conclusion of law 2.

> When an agent violates his fiduciary duty by fraudulently misappropriating the funds of his principal, then an action to recover the funds is grounded upon fraud within the meaning of the statute of limitations.

*Viewcrest Coop. Ass'n v. Deer,* 70 Wn.2d 290, 295, 422 P.2d 832 (1967); *see LaHue v. Keystone Inv. Co.,* 6 Wn. App. 765, 784, 496 P.2d 343, *review denied,* 81 Wn.2d 1003 (1972).

█ Under the 3–year limitation statute, RCW 4.16-

.080(4),[8] a cause of action for fraud does not accrue "until the discovery by the aggrieved party of the facts constituting the fraud". In a shareholder derivative action, which asserts a corporate cause of action, the corporation is the aggrieved party and the real party plaintiff. H. Henn & J. Alexander, *Corporations* § 369, at 1080 (3d ed. 1983); *see Bay City Lumber Co. v. Anderson,* 8 Wn.2d 191, 209, 111 P.2d 771 (1941).

Actual knowledge of the fraud will be inferred if the aggrieved party, by the exercise of due diligence, could have discovered it. The same rule applies in an action for fraud involving a fiduciary relation. *Sherbeck v. Estate of Lyman,* 15 Wn. App. 866, 868–69, 552 P.2d 1076 (1976).

Blackburn claims that substantial evidence in the record supports finding of fact 11. Bucholz argues that the 3–year limitations statute began to run in 1979 when Kreybig, an IPA shareholder, officer and director, knew facts which, by the exercise of reasonable inquiry, could have led to discovery of the alleged fraud.

The record shows that Kreybig, who was an IPA director as well as its general sales manager, knew that Bucholz had sold the Porsche 906 for $40,000 in March 1979 and, in fact, was present when the race car left the premises in a trailer. He further knew that the Porsche 906 sale was not recorded in the log that he, as sales manager, kept of all vehicle sales, yet he did not ask Bucholz for the car sale paperwork or check the pouch containing documents regarding the Porsche 906 that was available for his inspection as sales manager.

Here Kreybig knew facts in 1979 which, by the exercise of due diligence, could have led to discovery of the alleged fraud.

---

[8]RCW 4.16.080(4) provides:

"Within three years:

" . . .

"(4) An action for relief upon the ground of fraud, the cause of action in such case not to be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud;"

Notice sufficient to excite attention and put a person on guard or to call for an inquiry is notice of everything to which such inquiry might lead.

(Citation omitted.) *Sherbeck v. Estate of Lyman, supra* at 870. *See Davis v. Harrison,* 25 Wn.2d 1, 19, 21, 167 P.2d 1015 (1946). As an IPA officer and director, Kreybig had knowledge which is imputed to the corporation. *See Bay City Lumber Co. v. Anderson, supra* at 210–11.

Moreover, while finding of fact 11 states that until August 1982, Blackburn and Kreybig did not have access to the corporate records to ascertain IPA's financial condition, it further states that at that time Blackburn discovered the withholding of the Porsche 906 sale proceeds. No finding was made as to such discovery by Kreybig at that time. *See Bay City Lumber Co.,* at 210.

However, even in an action for fraud where a fiduciary relation exists, the burden is upon the plaintiff to show that the facts constituting the fraud were not discovered or could not have been discovered until within 3 years prior to the commencement of the action. *Bay City Lumber Co.,* at 209, 211; *Sherbeck v. Estate of Lyman, supra* at 870. Absent an express finding upon a material fact, it is deemed to have been found against the party having the burden of proof. *Sherbeck v. Estate of Lyman, supra; see Bay City Lumber Co. v. Anderson, supra* at 210. The plaintiff's burden has not been met here. The statute of limitations began to run in 1979, and the running of the limitation period now bars this claim.

### SALARY INCREASES

Blackburn argues that Bucholz's salary increases were improper because Bucholz was an interested director who voted on his own salary as an officer. We disagree. RCW 23A.08.340 expressly authorizes the board of directors to fix the compensation of directors unless otherwise provided in the articles of incorporation. Blackburn has not shown that IPA's articles of incorporation provide otherwise. The rationale underlying the statutory authorization for direc-

tors to vote on their own compensation extends to a vote to compensate an officer–director in a closely held corporation where a problem may otherwise exist in acquiring the necessary quorum or majority to fix the compensation of shareholder–director–officers. *See* 2 F. O'Neal, *Close Corporations* § 8.10, at 83–84 (2d ed. 1971).

■ Blackburn's argument that in the absence of the distribution of dividends, Bucholz's salary should be deemed to be a disguised dividend is meritless. The court in *Alaska Plastics, Inc. v. Coppock,* 621 P.2d 270, 277 (Alaska 1980), upon which Blackburn relies, stated:

Regardless of how the corporation labels these expenditures [*i.e.,* corporate benefits enjoyed by directors], if they were not made for the reasonable value of services rendered to the corporation, some portion of these payments might be characterized as constructive dividends.

Here since the unchallenged finding of fact 15, which is a verity on appeal, *Washington State Bar Ass'n v. Great Western Union Fed. Sav. & Loan Ass'n,* 91 Wn.2d 48, 53, 586 P.2d 870 (1978), states that Bucholz's salary was reasonable, Blackburn has failed to show a basis for characterizing the salary increases as constructive dividends.

### JUDGMENT CREDITOR

Bucholz and IPA contend that since the shareholder derivative action was brought on the corporation's behalf, judgment should have been entered not in favor of Blackburn on behalf of himself and the other shareholders but rather in favor of IPA or of Blackburn as trustee for IPA and its creditors and shareholders.

The general rule is that in a shareholder derivative action to enforce a corporate cause of action, the judgment belongs to the corporation rather than the individual stockholders. Nevertheless, a direct recovery to the stockholders may be permitted under exceptional circumstances, notwithstanding that such recovery amounts to a forced distribution of corporate assets to the stockholders. *Joyce v. Congdon,* 114 Wash. 239, 242–43, 195 P. 29 (1921); *LaHue v. Keystone*

*Inv. Co.,* 6 Wn. App. 765, 780–81, 496 P.2d 343, *review denied,* 81 Wn.2d 1003 (1972).

■ If awarding a recovery to a corporation would result in a stockholder's receiving a portion thereof to which he was not entitled, then a court of equity will look beyond the corporation and award the recovery to the individual stockholders entitled thereto. *Joyce v. Congdon, supra* at 243. However, when third party rights of higher priority, such as those of corporate creditors or claimants, are involved, then a judgment in favor of the stockholders, which would prejudice such rights, would be improper. *LaHue v. Keystone Inv. Co., supra* at 781.

Here Bucholz, as a shareholder, would profit from his wrongdoing if the corporation recovered the judgment amount; on the other hand, creditors' rights would be prejudiced by a direct recovery by the similarly situated stockholders. In view of these competing considerations, the judgment will be modified to be in favor of Blackburn as trustee for IPA and its creditors and shareholders, in accordance with Blackburn's and IPA's stipulated agreement.

## ATTORNEY FEES

Bucholz contends that if Blackburn could not prevail against him in a private cause of action for a state securities act violation, the question of Blackburn's recovering attorney fees from him under RCW 21.20.430 is moot. Blackburn argues that as a shareholder bringing on the corporation's behalf a derivative action which resulted in a judgment that created a fund for the corporation's benefit and conferred a substantial benefit upon the corporation by prohibiting Bucholz from continuing his improper conduct, he is entitled to trial and appellate attorney fees based upon the equitable common fund and substantial benefit doctrines.

■ In a shareholder derivative action an award of attorney fees and costs to a successful plaintiff is within the trial court's discretion. Nevertheless, such an allowance is war-

ranted only if the action was prosecuted not only nominally, but actually, in the corporation's behalf. *Leppaluoto v. Eggleston*, 57 Wn.2d 393, 407, 357 P.2d 725 (1960). Assuming that the present action has benefited not only Blackburn but the corporation as well, an award of attorney fees must be based upon a contract, statute, or recognized ground in equity. *Seattle Sch. Dist. 1 v. State*, 90 Wn.2d 476, 540, 585 P.2d 71 (1978).

Here the trial court granted Blackburn an attorney fee award against Bucholz based upon Bucholz's alleged violation of the state securities act. RCW 21.20.430 authorizes an attorney fee award in a private action brought for such a violation. The trial court further awarded to Blackburn judgment against IPA for his reasonable attorney fees and costs in bringing the shareholder derivative action.

In the absence of a contract or a statute, a recognized Washington exception to the general rule of no attorney fee recovery is the "common fund" exception, which applies where the litigant created or preserved a specific monetary fund for the benefit of others as well as himself, from which fund equity may allow reimbursement of attorney fees. This exception has been broadened to include situations where a litigant confers a substantial benefit on an ascertainable class, such as corporate stockholders. *Seattle Trust & Sav. Bank v. McCarthy*, 94 Wn.2d 605, 612–13, 617 P.2d 1023 (1980); *PUD 1 v. Kottsick,* 86 Wn.2d 388, 390–91, 545 P.2d 1 (1976).

Here Blackburn may recover his attorney fees from IPA based upon his having created a fund of judgment proceeds for the benefit of the corporation as well as himself and his having conferred on the ascertainable class of corporate stockholders a substantial benefit by preventing Bucholz's continued misuse of corporate assets. Moreover, since we have determined that Blackburn has not shown damage from Bucholz's alleged state securities act violation to be entitled to attorney fees under RCW 21.20.430, a statutory or other basis for an attorney fee award against Bucholz is nonexistent, and Blackburn's recovery is limited to the cor-

poration.

An award against the corporation of the minority share-holder's counsel fees and costs in vindicating a corporate claim for relief rests upon the rationale that the plaintiff's efforts conferred on the corporation a benefit for which the corporation itself would otherwise have had to pay. *Bailey v. Meister Brau, Inc.*, 535 F.2d 982, 995 (7th Cir. 1976). Two important policies underlie this established practice:

> First, since all shareholders benefit from the plaintiff's efforts without contributing equally to the litigation expenses, to allow them to obtain full benefit from the plaintiff's efforts without contributing equally to the expenses would unjustly enrich them at the plaintiff's expense. Second, reimbursement of expenses serves to encourage meritorious derivative actions by the small shareholder whose expenses would normally exceed any increase in the value of his holdings resulting from a successful litigation.

(Footnotes omitted.) 13 W. Fletcher, *Private Corporations* § 6045, at 447 (perm. ed. 1984).

The obligation to reimburse a shareholder who brings a successful derivative action is an obligation of the corporation, not the losing party to the action, and attorney fees are to be recouped out of the common fund, if any, created by the action, not from an increased judgment against the defendant. *Junker v. Crory*, 650 F.2d 1349, 1363 (5th Cir. 1981); *Bailey v. Meister Brau, Inc., supra;* W. Fletcher, *supra* at 446–47.

IPA argues that it is entitled to indemnity from Bucholz if it is liable for Blackburn's attorney fees. Restatement of Restitution § 76 (1937) provides:

> A person who, in whole or in part, has discharged a duty which is owed by him but which as between himself and another should have been discharged by the other, is entitled to indemnity from the other, unless the payor [*i.e.*, the indemnitee] is barred by the wrongful nature of his conduct.

*See* 41 Am. Jur. 2d *Indemnity* § 2, at 688 (1968); *Lunderberg v. Bierman*, 241 Minn. 349, 63 N.W.2d 355, 359, 43

A.L.R.2d 865 (1954). Indemnity transfers liability from one who has been compelled to pay damages to another who should bear the entire loss. *Olch v. Pacific Press & Shear Co.,* 19 Wn. App. 89, 93, 573 P.2d 1355, *review denied,* 90 Wn.2d 1017 (1978).

Citing *Olch v. Pacific Press & Shear Co., supra,* IPA claims that the basis for its right to indemnity from Bucholz is Bucholz's breach of an independent duty owed to it, *viz.,* the fiduciary duty owed by Bucholz to the corporation as a director. However, this duty is not independent of and separate from Bucholz's fiduciary duty, the breach of which is the basis for the damage award against Bucholz.

Citing several Washington cases, *e.g., North Pac. Plywood, Inc. v. Access Rd. Builders, Inc.,* 29 Wn. App. 228, 236, 628 P.2d 482, *review denied,* 96 Wn.2d 1002 (1981), IPA argues that an alternative basis for its right of indemnity is the rule that where the natural and proximate consequences of one person's wrongful act involve another in litigation with third persons, the wronged party may recover reasonable litigation expenses, including attorney fees. However, the attorney fees that the wronged party may recover under this rule are the wronged party's, not those of the third person with whom the wronged party is drawn into litigation and for which the wronged party may be held liable. IPA expressly disclaims that it seeks from Bucholz recovery of its own attorney fees. Thus its reliance upon this line of cases is misplaced.

At oral argument IPA's counsel conceded that none of the cases IPA cited in support of its indemnity claim involves a shareholder derivative action. Our research has unearthed two cases involving a corporation's claim for indemnity from its officers or directors for attorney fees awarded to the plaintiff who brought a shareholder derivative action. In *Moses v. McGarvey,* 614 P.2d 1363, 1367–68, 1371 (Alaska 1980), the Alaska Supreme Court upheld the indemnity award on grounds that since the trial court had the authority to award the attorney fees directly against the corporate officer, it could accomplish the same result by

ordering the officer to reimburse the corporation for the attorney fees awarded against it pursuant to a court rule.

■ In *Moses* the attorney fee award against the corporation was not based upon a common fund theory. In a case involving an attorney fee award under the common fund doctrine, the appellate court determined that the trial court in its discretion pursuant to equitable principles could require the individual defendants to pay all or part of the minority shareholders' attorney fees in a class action against the corporation and corporate directors alleging a fraudulent loan to another corporation controlled by the directors. *Ross v. 311 N. Cent. Ave. Bldg. Corp.*, 130 Ill. App. 2d 336, 264 N.E.2d 406, 415 (1970). However, the attorney fee award against the individual defendants in *Ross* was authorized by a statute which provided that the award of costs in an action in equity rested in the court's discretion, which was to be exercised according to equitable rules and principles. *Ross*, 264 N.E.2d at 414–15. In the absence of a contract, statute, or recognized equitable ground supporting an award of Blackburn's attorney fees against Bucholz, *Seattle Sch. Dist. 1 v. State, supra,* IPA's motion for indemnification properly was denied.

### DISSOLUTION OF CORPORATION

Bucholz argues that the trial court's order requiring the corporation's liquidation was an abuse of discretion and assigns error to the following conclusions of law:

> 6. The actions by Bucholz and his controlling position in the corporation fall within the type of conduct specified in RCW 23A.28.170(1)(b) and thereby justify liquidation of the corporation. Such actions effectively deprived the minority shareholders of any return on investment and had the effect of allowing Mr. Bucholz to take all net income of the corporation as salary, or otherwise. The court, under its equitable power, concludes that if the parties cannot agree to resolve their differences, the corporation's assets shall be sold and the corporation liquidated not later than December 31, 1985.

Conclusion of law 6 (in pertinent part).

8. Mr. Blackburn and Mr. Kreybig shall have first right of refusal to meet any offer obtained by Mr. Bucholz on the same terms and conditions as that offer obtained by Mr. Bucholz to purchase Mr. Bucholz's stock or to purchase the corporate assets. In the event this option for first right of refusal is not exercised within twenty days, the right of refusal is null and void.

Conclusion of law 8.

A superior court's jurisdiction to dissolve a corporation is authorized by RCW 23A.28.170, which provides in part:

The superior courts shall have full power to liquidate the assets and business of a corporation:

(1) In an action by a shareholder when it is established:

(a) That the directors are deadlocked in the management of the corporate affairs and the shareholders are unable to break the deadlock, and that irreparable injury to the corporation is being suffered or is threatened by reason thereof; or

(b) That the acts of the directors or those in control of the corporation are illegal, oppressive or fraudulent; or

(c) That the shareholders are deadlocked in voting power, and have failed, for a period which includes at least two consecutive annual meeting dates, to elect successors to directors whose terms have expired or would have expired upon the election of their successors; or

(d) That the corporate assets are being misapplied or wasted.

RCW 23A.28.170(1).

Although RCW 23A.28.170(1) confers upon the court the power to order dissolution upon finding one of the four situations, the power is discretionary, and the court need not order a dissolution merely because one of the jurisdictional requirements has been met. Rather, upon a showing of one of the jurisdictional requirements, "the trial court, in its discretion, shall determine whether there exist equitable grounds for ordering dissolution of the corporation", considering "whether such a dissolution will be beneficial or detrimental to all the shareholders, or injurious to the public." *Henry George & Sons, Inc. v. Cooper–George, Inc.*, 95 Wn.2d 944, 950, 953, 632 P.2d 512 (1981). The trial court's

dissolution determination will not be disturbed on appeal except in clear instances of an abuse of discretion. *Henry George & Sons,* at 953.

Conclusion of law 6 states implicitly that the trial court had jurisdiction under RCW 23A.28.170(1)(b) to order IPA's dissolution; however, the court made no specific findings that Bucholz's acts were illegal, oppressive or fraudulent within the meaning of the statute except for the statement in the same conclusion that his actions fell within the type of conduct specified in this statutory subsection. *See, e.g., Fox v. 7L Bar Ranch Co.,* 198 Mont. 201, 645 P.2d 929, 933–34 (1982); *White v. Perkins,* 213 Va. 129, 189 S.E.2d 315, 319–20 (1972).

Moreover, the statement in the same conclusion that Bucholz's statutorily proscribed actions had the effect of allowing him to take at least part of the corporation's net income as salary is not supported by the findings since the unchallenged finding of fact 15 is that Bucholz's salary was reasonable and thus, by implication, not improper. In addition, no finding indicates that the trial court properly considered the consequences to the shareholders or the public in determining whether equitable grounds existed for ordering the dissolution once it determined that it had the jurisdiction to do so. *Henry George & Sons, Inc. v. Cooper–George, Inc., supra* at 952–53; *see Baker v. Commercial Body Builders, Inc.,* 264 Or. 614, 507 P.2d 387, 393, 395, 56 A.L.R.3d 341 (1973).

If the trial court's findings are ambiguous, vague or incomplete, its oral decision may be used to aid in understanding the findings. *Bennett Veneer Factors, Inc. v. Brewer,* 73 Wn.2d 849, 853, 441 P.2d 128 (1968); *Port Townsend Pub'g Co. v. Brown,* 18 Wn. App. 80, 85, 567 P.2d 664 (1977). Here the trial court's oral opinion fails to reveal either the basis for its determination that Bucholz's conduct violated the statute or its consideration of equitable factors, including the effects upon the shareholders and

the public, in exercising its discretion to order dissolution. The findings here are inadequate to permit effective appellate review of the trial court's exercise of its discretion in ordering the corporation's liquidation; thus this portion of the judgment must be reversed with instructions to the trial court to enter appropriate findings on remand. *Bennett Veneer Factors, Inc. v. Brewer, supra* at 856; *Groff v. Department of Labor & Indus.*, 65 Wn.2d 35, 39–40, 47, 395 P.2d 633 (1964).

We find meritless Blackburn's argument that Bucholz breached his fiduciary duty by failing to disclose an alleged corporate opportunity. Blackburn's request for review of the Court of Appeals order regarding the stay of the corporation's dissolution by the posting of the supersedeas bond is untimely in light of the State Supreme Court's prior denial of review of this interlocutory order upon Bucholz's petition.

The portions of the judgment awarding damages against Bucholz and ordering the corporation's dissolution are reversed and the cause is remanded to the trial court for a reduction of $33,500 in the damage amount, for the taking of additional testimony or for an accounting or both, as necessary, to ascertain the amount of damages for Bucholz's breach of his fiduciary duty, and for the entry of findings of fact consistent with this opinion. The judgment for damages against Bucholz once the proper amount is determined is to be entered in favor of Blackburn as trustee for IPA and IPA's shareholders and creditors. While the trial attorney fee award against IPA is affirmed, the attorney fee award against Bucholz and his marital community is reversed. The trial court's judgment is affirmed in all other respects. The post–judgment order denying IPA indemnification from Bucholz is affirmed. In light of our disposition of the issues raised in the appeal and cross appeal, an award of attorney fees and costs on appeal, if any, is left to the trial court's discretion upon remand. *Seattle Trust &*

528

*Sav. Bank v. McCarthy,* 94 Wn.2d 605, 613, 617 P.2d 1023 (1980).

RINGOLD, A.C.J., and WILLIAMS, J., concur.

Review denied by Supreme Court January 6, 1987.