38 P.3d 379 (2002)
Tim SCOTT, Respondent,
v.
TRANS-SYSTEM, INC., d/b/a TSI Distribution Co., Defendant,
Northwestern Career Institute, Inc., d/b/a Northwest Career Training Center, a Washington corporation, Appellant.
No. 20129-5-III.
Court of Appeals of Washington, Division 3, Panel Seven.
January 17, 2002.
*380 Terry Martin, Spokane, for Appellant.
James McPhee, Crumb & Munding, Spokane, for Respondent.
SCHULTHEIS, J.
Northwestern Career Institute, Inc., doing business as Northwest Career Training Center, appeals the judicial dissolution of the corporation pursuant to RCW 23B.14.300, due to a finding of oppression, misapplication, or wasting of corporate assets. Finding no abuse of discretion, we affirm.

*381 FACTS
Tim Scott began employment with Trans-System, Inc. (TSI) in August 1987. He remained in its employ, except for approximately two months in 1992, until January 1998. In February 1994, a subsidiary corporation, Northwestern, was formed and Mr. Scott was named its chief administrative officer and director. His salary and benefits continued to be paid by TSI. Northwestern is a truck driver's training school for persons interested in obtaining a commercial driver's license. One of the principal reasons Northwestern was incorporated as a subsidiary of TSI was to provide the parent company with a source of well-trained drivers for use in its interstate trucking business. TSI provided Northwestern with the necessary start-up funding. TSI has four shareholders and Northwestern has five. The same four TSI shareholders have stock in Northwestern; the fifth shareholder in Northwestern is Mr. Scott.
As the chief administrative officer and director for Northwestern, Mr. Scott was responsible for all aspects of getting the school up and running. He also assumed responsibility for the day-to-day operations of the company, which included recruitment of new students, personnel matters, record keeping, debt collection, and testing each applicant for a commercial driver's license. The school turned a profit each year Mr. Scott was at the helm.
One area of disagreement between Mr. Scott and James Williams, the principal shareholder in both TSI and Northwestern, concerned certain contracts for equipment that Northwestern leased from a TSI subsidiary. Mr. Scott discussed with Mr. Williams his concern that some of Northwestern's annual payments for approximately half of the TSI equipment leases equaled or exceeded the equipment's value. Mr. Scott believed it would be more economical for Northwestern to purchase its own equipment rather than continue to lease it from TSI each year but Mr. Williams did not adopt the suggestion.
Another area of concern to Mr. Scott was Northwestern's $125,000 line of credit with Washington Trust Bank. According to a TSI employee, a portion of the line of credit ($50,000) was used to retire an outstanding loan from Northwestern to TSI. However, no documentation existed that proved TSI had loaned the money to Northwestern. On the other hand, it is undisputed that the remaining amount ($75,000) was used by TSI for purposes unrelated to Northwestern's driving school. Of concern to Mr. Scott was the fact that although TSI made the payments on the principal, Northwestern paid the interest that accrued each month. Mr. Scott was told to make the interest payments each month even though Northwestern received no benefit from the line of credit.
For reasons not pertinent to this appeal, Mr. Scott was unexpectedly terminated on January 16, 1998. A few months later he opened a competing professional truck driver training school. In 1999, Mr. Scott filed this lawsuit against TSI and Northwestern alleging five causes of action: (1) breach of contract; (2) promissory estoppel; (3) failure to pay wages; (4) defamation; and (5) a request for judicial dissolution of Northwestern. TSI and Northwestern denied the allegations and counterclaimed for conversion of funds.
At the conclusion of a bench trial, the trial court denied Mr. Scott's claims for breach of contract, promissory estoppel, and defamation against TSI. It also denied TSI and Northwestern's conversion counterclaim. However, Mr. Scott was awarded double damages on his successful claim for back wages and was awarded attorney fees on that claim as well. At the conclusion of the trial, the court gave the parties an opportunity to attempt to fashion a mutually agreeable settlement in order to avoid the judicial dissolution of Northwestern. After the parties were unable to reach an agreement, the trial court determined the requirements of RCW 23B.14.300(2)(b) and (d) had been established. Because it determined the directors of Northwestern and TSI had acted in an oppressive manner and misapplied or wasted corporate assets it ordered that Northwestern be judicially dissolved. Northwestern filed a timely notice of appeal on the dissolution issue.

ANALYSIS
The sole issue on appeal is whether the trial court abused its discretion when it *382 determined that judicial dissolution of Northwestern was appropriate pursuant to RCW 23B.14.300. Northwestern contends there was no evidence presented that supports such a drastic measure. Specifically, it assigns error to findings of fact XIII and XIV and conclusion of law V. Mr. Scott maintains the trial court decision was appropriate under the specific facts of this case. A trial court's decision regarding the dissolution of a corporation is reviewed for abuse of discretion. Interlake Porsche & Audi, Inc. v. Bucholz, 45 Wash.App. 502, 525-26, 728 P.2d 597 (1986). The standard used to review a trial court's findings of fact and conclusions of law is a two-step process. We must first determine whether the findings are supported by substantial evidence in the record. If so, we must next decide whether those findings support the conclusions of law. Landmark Dev., Inc. v. City of Roy, 138 Wash.2d 561, 573, 980 P.2d 1234 (1999); accord Robblee v. Robblee, 68 Wash.App. 69, 75-76, 841 P.2d 1289 (1992).
The judicial dissolution of a corporation statute reads in relevant part:
The superior courts may dissolve a corporation:
....
(2) In a proceeding by a shareholder if it is established that:
....
(b) The directors or those in control of the corporation have acted, are acting, or will act in a manner that is illegal, oppressive, or fraudulent;
....
(d) The corporate assets are being misapplied or wasted[.]
RCW 23B.14.300. The term oppressive has not been specifically defined in case law in this state. However, Division One of this court in another corporation case, Robblee, 68 Wash.App. 69, 841 P.2d 1289, set forth two tests used by courts in other jurisdictions to define the term. The "reasonable expectations test" defines oppression as a violation by the majority shareholders of the "spoken and unspoken understandings on which the founders of a venture rely when commencing the venture." Id. at 76, 841 P.2d 1289. A second test describes oppression as:
"burdensome, harsh and wrongful conduct; a lack of probity and fair dealing in the affairs of a company to the prejudice of some of its members; or a visible departure from the standards of fair dealing, and a violation of fair play on which every shareholder who entrusts his money to a company is entitled to rely."
Id. (quoting Gimpel v. Bolstein, 125 Misc.2d 45, 50 51, 477 N.Y.S.2d 1014 (1984)).
At the conclusion of a bench trial the trial court entered the following findings of fact regarding its decision to dissolve the corporation:

XIII.
Approximately two years prior to Mr. Scott's termination, Northwest had a line of credit with Washington Trust Bank in the amount of $125,000.00. A portion of [t]hat line of credit was utilized by TSI but Northwest had to pay the interest thereon. Despite Mr. Scott's protests, Northwest made said interest payments for approximately 1.5 years prior to Mr. Scott's termination. TSI's comptroller, Ted Rehwold, testified that this arrangement was considered a repayment for some loans between TSI and Northwest. Mr. Rehwold further testified that, in hindsight and upon further review, this arrangement was not proper. In addition, the court was not provided with any proper accounting for said loan and interest payments.

XIV.
TSI, through one of its subsidiaries, leased equipment (tractors and trailers) to Northwest, for use in its business. Several such leases were entered into evidence. In some of the lease agreements, the sum of the lease payments over the term of the lease exceed[ed] the equipment's stated actual value. Mr. Scott requested of James Williams that [Mr. Scott] be allowed to purchase said equipment under said leases rather than pay more in lease payments but was refused this opportunity. As such, TSI profited at Northwest's expense.
*383 Clerk's Papers (CP) at 43. These findings are supported by the record through plaintiff's exhibit 18, which included copies of eight lease agreements, four of which contained abhorrent terms. For example, equipment worth $9,000 was leased from TSI by Northwestern for $9,000 annually. The next year the same lease was increased to $12,000 annually.[1] Likewise, three other leases included equipment worth $3,600 leased at $6,000 annually;[2] equipment worth $4,000 was leased for $6,000 annually;[3] and equipment worth $3,600 was leased for $6,500.[4]
The court then made the following conclusion of law:

V.
Judicial dissolution of the defendant Northwest is appropriate pursuant to RCW 23B.14.300. The requirements set forth in RCW 23B.14.300(2)(b) and (d) for judicial dissolution of a corporation have been met. Therefore, Northwestern Career Institute, Inc., d/b/a Northwest Career Training Center, should be judicially dissolved.
CP at 45.
Northwestern complains that the trial court abused its discretion when it dissolved the corporation due to decisions made pursuant to the business judgment rule. We disagree. The business judgment rule prevents the imposition of liability on corporate management for corporate transactions undertaken within the corporation's power and management's authority when a reasonable basis exists to indicate that the transaction was made in good faith. Interlake Porsche, 45 Wash.App. at 509, 728 P.2d 597. However, such immunity from liability is absent when a corporate director or officer is shown to have acted in bad faith and with a corrupt motive. Id.
Here, the trial court found that TSI's decision to borrow against Northwestern's line of credit while requiring Northwestern to fund the interest payments was evidence of illegal, oppressive, or fraudulent action on the part of the majority shareholders and/or evidence of the misapplication or wasting of corporate assets. Likewise, the court determined the four inequitable equipment lease agreements presented further evidence of illegal, oppressive, or fraudulent action and/or evidence of the misapplication or wasting of corporate assets. The court's findings in this regard are supported by substantial evidence in the record and the findings support the conclusions. The court's decision is not an abuse of discretion.
Affirmed.
WE CONCUR: KURTZ, C.J. and KATO, J.
NOTES
[1] Pl.'s Ex. 18, at 5-10.
[2] Pl.'s Ex. 18, at 27.
[3] Pl.'s Ex. 18, at 32.
[4] Pl.'s Ex. 18, at 37.