The CONTINENTAL INSURANCE COMPANY, a foreign corporation, Plaintiff,

v.

PIERCE COUNTY, WASHINGTON, a municipal corporation, et al., Defendants.

The PACIFIC INSURANCE COMPANY, a foreign corporation, Plaintiff,

v.

PIERCE COUNTY, WASHINGTON, a municipal corporation, et al., Defendants.

No. C84–729TR, C84–730TR.

United States District Court, W.D. Washington.

Sept. 30, 1987.

On Motion For Reconsideration Jan. 13, 1988.

Lee A. Holley, Lynnwood, Wash., George Kargianis, James E. Graham, Kargianis, Austin & Erickson, Seattle, Wash., Phillip J. French, Tacoma, Wash., for plaintiff.

Craig Miller, Davis Wright & Jones, Seattle, Wash., for Pierce County.

Warren R. Peterson, Gordon, Thomas, Honeywell, Malanca, Peterson & Daheim, Tacoma, Wash., for Panagiotu.

ORDER GRANTING IN PART AND DE-
NYING IN PART DEFENDANTS'
MOTIONS FOR SUMMARY JUDG-
MENT

ROTHSTEIN, Chief Judge.

THIS MATTER comes before the court on motions for summary judgment filed by defendant Pierce County ("the County") and defendant Michael Panagiotu, and a

motion to dismiss filed by defendant Joseph M. Carbone.[1] Having reviewed the motions, together with all documents filed in support and in opposition, and being fully advised, the court finds and rules as follows:

## I. FACTS

On February 23, 1976, arsonists set fire to the Exit Tavern, completely destroying the building. On August 7, 1978, arsonists also set fire to and destroyed the residence of John Joseph Carbone. Plaintiffs Pacific Insurance Company ("Pacific") and Continental Insurance Company ("Continental") had issued fire insurance policies on the buildings and allege that defendants Pierce County and Michael Panagiotu concealed from plaintiffs the parties responsible for the arson. As a result of the alleged conspiracy, plaintiffs contend that they honored fraudulent insurance claims for the Carbone residence and the Exit Tavern.

On November 13, 1984, Pacific Insurance filed its complaint against defendants, and two days later, Continental Insurance did the same. Both plaintiffs alleged three identical claims: defendants deprived plaintiffs of equal protection of the laws in violation of 42 U.S.C. §§ 1983 and 1985, defendants' participation in the conspiracy violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, and third, defendants committed fraud and breached their fiduciary duties to plaintiff under Washington State law.

On January 23, 1986, the court dismissed all claims against defendant Pierce County on the grounds that the statute of limitations had expired on plaintiffs' claims. *See* Order Granting Defendant Pierce County's Motion to Dismiss and Denying Defendant Panagiotu's Motion to Dismiss ("Order Dismissing Claims"), issued January 27, 1986. On May 6, 1986, the court reconsidered its previous order and vacated the dismissal of defendants Pierce County and Michael Panagiotu. *See* Order Granting Reconsideration of Orders Dismissing Pierce County and Michael Panagiotu ("Order Granting Reconsideration"), issued May 6, 1986. The parties subsequently engaged in limited discovery on the issue of the statute of limitations, and now defendants move for summary judgment, alleging that the statute of limitations has expired on plaintiffs' claims.

## II. DISCUSSION

A grant of summary judgment is appropriate if it appears, after viewing the evidence in the light most favorable to the opposing party, that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Association,* 809 F.2d. 626, 630–631 (9th Cir.1987); *Lew v. Kona Hospital,* 754 F.2d 1420, 1423 (9th Cir.1985). Summary judgment is not appropriate if "a result other than that proposed by the moving party is possible under the facts and applicable law." *Aronsen v. Crown Zellerbach,* 662 F.2d 584, 591 (9th Cir.1981).

### A. Statute of Limitations and Accrual of Plaintiffs' Claims

The parties do not dispute the applicable statute of limitations. For plaintiffs' § 1983 claims, the statute of limitations is three years under RCW 4.16.080. *Wilson v. Garcia,* 471 U.S. 261, 272, 105 S.Ct. 1938, 1945, 85 L.Ed.2d 254 (1985) (select appropriate state statute of limitations period); *Gibson v. United States,* 781 F.2d 1334, 1338–1339 (9th Cir.1986); *Compton v. Ide,* 732 F.2d 1429, 1432 (9th Cir.1984). The United States Supreme Court recently established a four-year statute of limitations for civil claims under RICO. *Agency Holding Corp. v. Malley–Duff & Associates,* — U.S. —, —, 107 S.Ct. 2759, 2764, 97 L.Ed.2d 121 (1987). Finally, plaintiffs' state law claims for fraud and breach of fiduciary duties have a three-year statute of limitations under RCW 4.16.080(4).

---

**1.** Since plaintiffs have filed no opposition to defendant Carbone's motion, the court grants defendant's motion to dismiss.

The parties actively dispute the point at which plaintiffs accrued their claims against defendants, or in other words, when plaintiffs discovered or should have discovered their claims under federal and state law. Defendants contend that the arrests, superseding indictments, trial, and conviction of Pierce County Sheriff George Janovich, John Carbone, and other coconspirators for arson and insurance fraud ("the conspiracy")—coupled with press coverage of racketeering in the County, the two civil actions filed against the County in 1979, and this court's order in *Anderson v. Janovich,* No. C79–283T(S)R (W.D.Wash. 1980) allowing a civil rights suit to proceed against the County—gave plaintiffs sufficient notice of their claims against the County and Panagiotu. According to defendants, plaintiffs at the very least knew of their claims against defendants on November 5, 1980, the date of the *Anderson* order.

Plaintiffs allege that their federal claims accrued against defendants in January, 1983, when Ron Williams, a convicted member of the conspiracy, testified to the County's involvement in the arson and racketeering activity. Previous rulings by this court have endorsed this argument. *See Consumers Insurance Company v. Carbone,* No. C79–312TR, (W.D.Wash.1983) (Order Granting Chases' Motion for Reconsideration, issued August 11, 1983). Prior to Williams' testimony, Panagiotu and other employees of the County allegedly covered up the pervasive involvement of the County in the arson and insurance fraud conspiracy. Furthermore, plaintiffs contend that their diligent investigation of the arsons did not reveal that the County might be responsible for their injury. Therefore, plaintiffs allege that they did not accrue a claim until Ron Williams implicated the County and Panagiotu in the conspiracy.

 Under the federal rule of accrual, however, knowledge of the responsible party is not necessary to accrue a federal cause of action. Federal law determines when a federal cause of action accrues. *Compton,* 732 F.2d at 1432; *Cline v. Bru-*

*sett,* 661 F.2d 108, 110 (9th Cir.1981). Here, plaintiffs had a claim against defendants when plaintiffs knew or had reason to know of the *injury* which is the basis of their cause of action. *Norco Construction, Inc. v. King County,* 801 F.2d 1143, 1145 (9th Cir.1986). In *Gibson v. United States,* the Ninth Circuit rejected the contention made by plaintiffs that litigants must know who caused their injury in order to have a federal claim.

Language in [*United States v. Kubrick,* 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979)], emphasizing the strategic importance to the litigant of knowing whom to sue, supports plaintiffs' proposed construction ... However, binding circuit precedent forecloses us from considering such an extension of *Kubrick.* In *Dyniewicz v. United States,* 742 F.2d 484 (9th Cir.1984), decedents' children discovered more than two years after a flash flood swept their parents' car off the road that national park rangers may have been responsible for the negligent road supervision that led to their parents' death. This court upheld the district judge's dismissal of the children's subsequent FTCA action on the ground that the administrative claim required for judicial relief was not timely filed. Distinguishing between the cause of the injury and the party responsible for inflicting it, the court held that the 'cause' is known when the immediate physical cause of the injury is discovered. The court reasoned that once plaintiffs knew both the fact of the injury and its immediate physical cause, their cause of action accrued. Their ignorance of the involvement of United States employees is irrelevant ... Likewise, ... in the absence of fraudulent concealment it is plaintiff's burden, within the statutory period, to determine whether and whom to sue.

*Gibson,* 781 F.2d at 1344 (citations omitted).

 In the absence of fraudulent concealment, plaintiffs' federal claims accrued when the Exit Tavern and John Carbone's home burnt to the ground. Plaintiffs had the burden from that moment on to dis-

cover both the cause of the fires and the identity of the parties that set them. Therefore, the court rejects plaintiffs' construction of the standard of accrual, and in light of the clear dictates of *Gibson,* the court will not follow its earlier opinions which relied on the broader standard of accrual under state law.

■ Plaintiffs also contend that the County fraudulently concealed its involvement in the alleged racketeering activity. To make out a claim of fraudulent concealment, plaintiffs must (1) plead with particularity the circumstances surrounding the concealment and state facts showing their due diligence in trying to uncover the facts, and (2) allege facts showing affirmative conduct upon the part of defendant which would, under the circumstance of the case, lead a reasonable person to believe that he did not have a claim for relief. *Gibson,* 781 F.2d at 1345.

■ The court finds that, regardless of defendants' alleged conduct, plaintiffs had notice of their claims no later than November 5, 1980. On November 5th, this court held in *Anderson v. Janovich,* No. C79–283T(S)R (1980), that a civil plaintiff may sue the County for its alleged involvement in the racketeering activity, the same claim at issue here. *Anderson,* slip op. at 2. Since prior counsel for Pacific Insurance had knowledge of the court's ruling in *Anderson,* plaintiffs had reason to believe that they had a claim for relief against the County. *Gibson,* 781 F.2d at 1345; *See* Holley Deposition at 63–66, Defendant's Exhibit 20. Therefore, no genuine issues of fact exist over plaintiffs' claim of fraudulent concealment. Regardless of alleged racketeering activity, plaintiffs had independent notice of their claims against the County on November 5, 1980.

The court finds that the statute of limitations has expired on plaintiffs' federal claims. After the ruling in *Anderson,* more than four years passed before plaintiffs filed their complaints against defendants. The four-year limit on RICO claims and three-year limit on § 1983 claims had expired, barring plaintiffs' federal claims against defendants. Therefore, the court grants defendants' motion for summary judgment on plaintiffs' claims under federal law.

■ The court denies, however, defendants' motion for summary judgment on plaintiffs' state law claims. Unlike the federal standard of accrual, for a claim of fraud to accrue under state law, plaintiff must be "aware of all the essential elements of the action—the responsible party, causation and damages." *Buxton v. Perry,* 32 Wash.App. 211, 214, 646 P.2d 779 (1982). Furthermore, plaintiffs' knowledge of the essential elements of their claim, and their diligence in discovering the underlying facts, is a question of fact for the jury. *Ohler v. Tacoma General Hospital,* 92 Wash.2d 507, 510, 598 P.2d 1358 (1979).

The court finds a genuine issue of material fact concerning plaintiffs' awareness of defendants' alleged fraudulent conduct. As discussed above, the parties actively dispute when plaintiffs' knew or should have known of defendants alleged involvement in the arson and insurance fraud conspiracy. Under the state law, this dispute is material to the accrual of plaintiffs' state law claims and expiration of the statute of limitations. Therefore, summary judgment on these grounds is inappropriate.

THEREFORE, defendants Pierce County and Michael Panagiotu's motions for summary judgment are GRANTED for plaintiffs' claims under federal law and DENIED for plaintiffs' claims under state law. Defendant Carbone's motion to dismiss is GRANTED.

IT IS SO ORDERED.

## ORDER DENYING PLAINTIFFS' MOTION FOR RECONSIDERATION AND DISMISSING PLAINTIFFS' STATE LAW CLAIMS

ON MOTION FOR RECONSIDERATION

THIS MATTER comes before the court on plaintiffs' motion for reconsideration, motion to set aside dismissal of defendant Carbone, and motion for entry of judgment. Having reviewed the motions, together with all documents filed in support

and in opposition, and being fully advised, the court finds and rules as follows:

## I. FACTS

On September 30, 1987, this court granted summary judgment on plaintiffs' claims under federal law against defendants Pierce County and Michael Panagiotu ("the County defendants") and on all plaintiffs' claims against defendant Joseph M. Carbone. *See* Order Granting In Part And Denying In Part Defendants' Motions For Summary Judgment ("Summary Judgment Order"), issued September 30, 1987. The Summary Judgment Order describes the underlying facts in this matter and the prior orders entered in this and related cases.

Plaintiffs' complaints, filed on November 13 and 15, 1984, alleged three claims: defendants deprived plaintiffs of equal protection of the laws in violation of 42 U.S.C. §§ 1983 and 1985, defendants' participation in an arson and insurance fraud conspiracy ("the conspiracy") violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, and third, defendants committed fraud and breached their fiduciary duties to plaintiffs under Washington state law. In its Summary Judgment Order, this court held that the statute of limitations had expired on plaintiffs' federal claims, but a genuine issue of material fact existed as to whether the statute expired on plaintiffs' state claims.

Plaintiffs now seek reconsideration of the Summary Judgment Order on four grounds. First, plaintiffs allege that they did not have actual notice of this court's ruling in *Anderson v. Janovich,* No. C79–283(T)R (W.D.Wash 1980) ("Order Granting Plaintiffs' Motion for Reconsideration and Denying Defendant's Motion to Dismiss 42 U.S.C. § 1983 Claim Against Pierce County," issued November 5, 1980) ("*Anderson* Order"), and therefore did not have independent notice of their claims against the County. Second, Plaintiffs contend that even if they knew of the *Anderson* Order, they had no actual notice of their RICO claims against the County.

Third, Plaintiffs reassert that their claims accrued in January 1983, when Ron Williams, a convicted member of the arson and insurance fraud conspiracy, testified to the County's involvement in the conspiracy. Finally, fourth, Plaintiffs contend that summary judgment is inappropriate in this matter given the court's restrictions on the scope of discovery.

## II. DISCUSSION

### A. Accrual of Plaintiffs' Claims Under 42 U.S.C. § 1983

Plaintiffs state that they do not disagree with the court's description of the federal standard of accrual, but rather take issue with the court's treatment of their allegations of fraudulent concealment. As a preliminary matter, however, plaintiffs raise two arguments on reconsideration which challenge this court's reliance on the federal standard of accrual set forth in *Gibson v. United States,* 781 F.2d 1334 (9th Cir. 1986) and *Compton v. Ide,* 732 F.2d 1429 (9th Cir.1984). First, plaintiffs distinguish *Gibson* on its facts, suggesting that plaintiffs in *Gibson* knew that their garage burned as a result of arson. Here, however, plaintiffs assert they had no notice of any extrinsic facts causing them to know that the fires at the Carbone home and Exit Tavern were not accidental.

The court finds *Gibson* controlling in the present case. Contrary to their assertions, plaintiffs did have notice that the fires at the Exit Tavern and Carbone residence may have been arson. *See* Letter of Detective Tom Lawrence, dated May 4, 1979, Exhibit 1 to Plaintiffs' Reply Memorandum ("the cause of [the Carbone house fire] has been determined to be arson"); Superseding Indictment, *United States v. Carbone, et al.,* No. CR78–97T (W.D.Wash. February 27, 1979), Exhibit 3 to Plaintiffs' Reply Memorandum (Overt Acts, paragraph 3, describes the arson of the Exit Tavern). Furthermore, the Ninth Circuit in *Gibson* addressed claims identical to those here, namely discovery of claims arising out of arson.

Plaintiffs claim that their cause of action against the government did not begin to

run until they discovered in 1977 that FBI agents hatched the plot to burn Gibson's garage. Nonetheless, the incident alone immediately alerted them to the fact of their injury, *i.e.,* the destruction of Gibson's property, and its cause, fire. *Gibson,* 781 F.2d at 1344. Thus, the court shall not reconsider its reliance on the standard of accrual articulated by the Ninth Circuit.

■ Second, plaintiffs contend that their cause of action under RICO accrued when they knew or had reason to know of the injury from the last predicate act of the alleged conspiracy involving the County. In support, plaintiffs cite two opinions from District Courts in the Southern District of New York which excluded RICO claims from the normal federal rule of accrual. *Moll v. U.S. Life Insurance Co.,* 654 F.Supp. 1012 (S.D.N.Y.1987); *Bankers Trust Company v. Feldesman,* 648 F.Supp. 17 (S.D.N.Y.1986). Plaintiffs inexplicably fail to mention, however, that the Ninth Circuit has held to the contrary. *Compton,* 732 F.2d at 1433 (the focus of RICO's civil remedy provision "upon injury as opposed to existence of a conspiracy suggests that the normal federal rule on accrual should apply to civil RICO actions alleging conspiracy"); *see also Bankers Trust Co.,* 648 F.Supp. at 36 n. 8 ("at least two courts of appeals have applied the general federal rule to civil RICO claims", citing *Compton*). Therefore, the court will follow the Ninth Circuit rule governing conspiracies—a cause of action arises from a conspiracy's separate wrongs, not its last predicate act. *Gibson,* 781 F.2d at 1340.

Plaintiffs seek reconsideration on the grounds that plaintiffs and their counsel did not have actual notice of this court's *Anderson* Order. After reviewing the deposition testimony of Lee Holley, plaintiffs' counsel at the time of the *Anderson* Order, the court assumed that Holley had read the court's ruling in *Anderson* soon after it was issued. *See* Summary Judgment Order at 7. Plaintiffs subsequently submitted the Declaration of Lee Holley, dated October 19, 1987, in which Holley states that he did not investigate, nor have notice of the *Anderson* Order until after Ron Williams' deposition in January, 1983. In light of this declaration, the court shall amend its prior ruling dismissing plaintiffs' allegations of fraudulent concealment.

■ To accrue a federal cause of action, a litigant need only know the fact of the injury and its immediate physical cause. *Gibson,* 781 F.2d at 1344. Ignorance of the responsible party is irrelevant. *Id.* However, when plaintiffs alleged that the County defendants fraudulently concealed their participation in the conspiracy, plaintiffs made their discovery of the County's involvement relevant to a limited extent. As long as plaintiffs had no reason to suspect that the County defendants may have participated in the arson and insurance fraud conspiracy, plaintiffs' allegations of fraudulent concealment, if true, would toll the statute of limitations. Once plaintiffs discovered or should have discovered facts which pointed to the County defendants' involvement, however, the statute would again run.

The court finds that by November 5, 1980, plaintiffs should have known that the County defendants might have been responsible for plaintiffs' injuries. The *Anderson* Order was the last in a series of events which should have alerted plaintiffs to the possibility of claims against the County defendants. *See* Summary Judgment Order at 4 (listing publicity and litigation which accompanied the criminal convictions of conspirators). Immediately following the widely publicized criminal convictions of Pierce County Sheriff George Janovich, John Carbone, and others, plaintiff in *Anderson* filed the first civil action against the conspirators, once again with prodigious coverage in the press. Thus, when this court ruled in *Anderson* that plaintiff stated a claim under 42 U.S.C. § 1983 against the County, it did so after two years of extremely visible criminal and civil litigation.

Had plaintiffs diligently investigated their claims, they would have discovered the nearly identical claims of arson and fraud alleged in *Anderson,* and most importantly, the claims alleged against the

County defendants. Since evidence discoverable through the exercise of reasonable diligence may serve as constructive notice of plaintiffs' claims, plaintiffs' lack of actual notice is a weak reed on which to base a defense. *Volk v. D.A. Davidson Co.*, 816 F.2d 1406, 1415 (9th Cir.1987) (plaintiff "must demonstrate that they had neither actual nor constructive notice of the facts constituting their claims for relief"). The court finds, therefore, that plaintiffs had constructive notice of their claims against the County defendants by November 5, 1980, and will amend its judgment accordingly.

Plaintiffs' claims of fraudulent concealment do not alter the court's ruling. To allege fraudulent concealment, plaintiffs must show "affirmative conduct on the part of the defendant which would, under the circumstances of the case, lead a reasonable person to believe that he did not have a claim for relief." *Volk*, 816 F.2d at 1415; *Gibson*, 781 F.2d at 1345. Plaintiffs direct the court to paragraphs 21 through 23 of their amended complaint where they claim that the County defendants participated in the arson and insurance fraud conspiracy and then covered up the County's involvement. The specific acts of fraud, however, all occurred before the individual defendants and co-conspirators were indicted and tried in 1979. Plaintiffs' sole allegation of fraudulent conduct after 1980 appears in paragraph 22(g) of the amended complaint.

> Defendants, in concert and conspiracy with diverse other officials, employees, agents and representatives of Defendant, PIERCE COUNTY, under color of law, did corruptly cover up the illegal activities, did suppress honest evidence of corruption and cover-ups, did intimidate and coerce honest officials, employees, agents and representatives to remain silent (continuing to date) so that Plaintiff has been and continues to be impeded, hindered, delayed, obstructed and denied in its rights to honest information from government, the true facts, the use of its money and its rights to do business in an atmosphere of honest and integrated government.

Amended Complaint, filed July 23, 1985, at 12.

The court finds that plaintiffs have failed to allege with particularity the County defendants' affirmative fraudulent conduct after the date of the *Anderson* Order, November 5, 1980. Once defendants were convicted of criminal offenses, plaintiffs had the burden to establish continuous fraudulent conduct, a burden which plaintiffs have not satisfied. Therefore, plaintiffs' claims of fraudulent concealment do not affect or negate the independent notice afforded by the *Anderson* Order.

### B. Accrual of Plaintiffs' Rico Claims

■ Plaintiffs allege that the *Anderson* Order did not address claims under RICO, and therefore could not serve as notice that a civil plaintiff could sue the County for racketeering activity. The court finds to the contrary. Plaintiffs need only have notice of the facts which are the basis of their claims, not the legal claims themselves. *Volk*, 816 F.2d at 1415.

> A claim accrues as soon as a potential claimant either is aware or should be aware of the existence of and source of his injury, not when he knows or should know that the injury constitutes a legal wrong. A different rule would require insufficient diligence on the part of potential claimants.

*Lee v. United States*, 809 F.2d 1406, 1410 (9th Cir.1987).

In his amended complaint, plaintiff in *Anderson* alleged that the County ratified, adopted, and accepted the various acts of arson and insurance fraud committed by Sheriff Janovich and his co-conspirators and furthermore, actively participated in the conspiracy. *See* Amended Complaint for Damages, *Anderson v. Janovich*, No. C79–283(T)R (April 3, 1980). Since plaintiffs had constructive notice of the facts underlying all their federal claims, the court declines to reconsider its ruling that the statute of limitations expired on plaintiffs' claims under RICO.

## C. The Legal Significance of the Williams Deposition

Plaintiffs reallege that only after defendant Williams testified to the pervasive corruption within the County government did plaintiffs have facts sufficient to file suit. Normally, "[w]hen a plaintiff has notice of wrongful conduct, it is not necessary that he have knowledge of all the details or all of the persons involved in order for his cause of action to accrue." *Compton,* 732 F.2d at 1433. However, claims against the County as a co-conspirator complicate the standard of accrual significantly. At some point, the illegal actions of individual public officials become the actions of the municipal or county government, but that point is rarely if ever clear. To assess municipal liability under § 1983, the United States Supreme Court defines governmental action as the point at which actions of officials become a pattern, practice, or custom of local government. *Monell v. Department of Social Services of the City of New York,* 436 U.S. 658, 690, 98 S.Ct. 2018, 2035, 56 L.Ed.2d 611 (1978). Thus, in the absence of other evidence, plaintiffs could contend plausibly that they did not know that the County defendants injured them until Williams testified to the depth and breadth of the conspiracy.

■ The court ruled in this matter, though, as it did in *Anderson,* that a civil plaintiff could allege facts in 1980 sufficient to claim that the County, as a pattern, practice, or custom, allowed the arson and insurance fraud conspiracy to prosper. Certainly Williams' testimony added to plaintiffs' claims against the County defendants, but it was not the sole evidence available to plaintiffs at the time. To hold a municipal government liable for participation in a conspiracy, a plaintiff must know enough facts to allege that the conspiracy extended beyond individual officials to the government itself. This court readily admits that defining the point of sufficient knowledge is hardly simple or precise. However, by November 5, 1980, plaintiffs had passed this point. The court therefore reaffirms its ruling that in 1980, plaintiffs had or should have had sufficient knowledge of their claims against the County defendants.

## D. Appropriateness of Summary Judgment

Plaintiffs argue that summary judgment is inappropriate when the court limits discovery to issues concerning the statute of limitations and when the parties actively contest what plaintiffs knew or should have known. The Ninth Circuit, however, recently endorsed the use of summary judgment in the present circumstances.

> Ordinarily, a defendant has an extremely difficult burden to show that a fraud action is barred as a matter of law. The determination of whether a plaintiff knew or should have known of a cause of action presents a question for the trier of fact ... However, the extent to which a plaintiff used reasonable diligence is tested by an objective standard ... A district court may, therefore, grant a summary judgment motion if the uncontroverted evidence irrefutably demonstrates that a plaintiff discovered or should have discovered the fraud but failed to file a timely complaint. This court has upheld many lower court decisions granting summary judgment motions when, as a matter of law, a plaintiff knew or should have known of his injuries and failed to protect his rights in a timely fashion.

*Volk,* 816 F.2d at 1417 (citations omitted). Accordingly, this court finds summary judgment appropriate on the grounds that the statute of limitations has expired on plaintiffs' federal claims.

## E. Accrual of Plaintiffs' State Claims

In the Summary Judgment Order, this court held that plaintiffs' awareness of the County defendants' fraudulent conduct under state law was a genuine issue of material fact and therefore this court denied summary judgment on plaintiffs' state claims. *See* Summary Judgment Order at 8. Plaintiffs contend that since the same factual foundation supports their federal RICO and state fraud claims, the court should reconsider its inconsistent application of the standard for summary judgment

to the federal and state standards of accrual.

The court shall reconsider its denial of summary judgment on plaintiffs' state claims. The court premised its previous ruling on the difference between the federal standard of accrual, which does not require knowledge of the responsible party, and its state counterpart which does. *Compare Gibson*, 781 F.2d at 1344 (knowledge of perpetrator not required) *with Buxton v. Perry*, 32 Wash.App. 211, 214, 646 P.2d 779 (1982) (knowledge of all essential elements required—responsible party, causation, and damages). As discussed above, however, allegations of fraudulent concealment interject knowledge of the responsible party into the federal standard of accrual. Thus, plaintiffs note correctly that the same set of facts determine when plaintiffs accrued both their state and federal claims.

■ Under Washington law, a cause of action for fraud does not accrue "until the discovery by the aggrieved party of the facts constituting the fraud." RCW 4.16.-080(4). Actual notice of the fraud will be inferred if the aggrieved party, by the exercise of due diligence, could have discovered it. *Interlake Porsche v. Bucholz*, 45 Wash.App. 502, 728 P.2d 597 (1986); *Sherbeck v. Estate of Lyman*, 15 Wash.App. 866, 869, 552 P.2d 1076 (1976). Furthermore, "[n]otice sufficient to excite attention and put a person on guard or to call for an inquiry is notice of everything to which such inquiry shall lead." *Corliss v. Hartge*, 180 Wash. 685, 689, 42 P.2d 44 (1935) *quoted in Sherbeck*, 15 Wash.App. at 870, 552 P.2d 1076.

■ The court finds that the civil and criminal litigation and accompanying publicity which culminated in the *Anderson* Order, notified plaintiffs of their potential claims against the County defendants under state law. The record before the court contains uncontested facts which should have put plaintiffs on guard or called for an inquiry, and thus, the court finds that plaintiffs have failed to show "that the

facts constituting the fraud were not discovered or could not have been discovered until 3 years prior to the commencement of the action." *Interlake Porsche*, 45 Wash. App. at 518, 728 P.2d 597. Therefore, the court grants summary judgment for the County defendants on plaintiffs' state claims.

### F. Claims Against Defendant Joseph M. Carbone

Plaintiffs seek to set aside the court's order granting for failure to oppose, defendant Joseph M. Carbone's ("defendant Carbone's") motion to dismiss. *See* Summary Judgment Order at 2 n. 1. Plaintiffs allege that defendant Carbone did not serve his motion to dismiss on plaintiffs' co-counsel at the time, the law firm of Kargianis & Austin. The court therefore shall amend its order and address the merits of defendant Carbone's motion to dismiss.

Defendant Carbone moves to dismiss under Fed.R.Civ.P. 12(b)(6) on the grounds that the statute of limitations have expired on plaintiffs' claims.[1] Defendant contends that the Superseding Indictment and subsequent criminal trial and conviction notified plaintiffs of their claims against defendant Carbone. In response, plaintiffs allege first that the district court struck that portion of the Superseding Indictment which charged arson of the Carbone home. Second, a lawsuit filed by John Carbone precluded plaintiffs from considering claims against defendant Joseph M. Carbone and third, defendant Carbone's continuing tortious conduct tolled the statute of limitations.

■ The court finds that the statute of limitations has expired on plaintiffs' claims against defendant Carbone. The Superseding Indictment charged defendant Carbone with participation in a pattern of racketeering activity through multiple acts and threats involving murder, arson, and bribery, and the Indictment listed the fire at the Carbone home and at the Exit Tavern

---

1. Since the court refers to materials outside the pleadings, it shall treat defendants motion as one for summary judgment. *See* Fed.R.Civ.P. 12(b).

as specific acts of arson. Superseding Indictment, Count I ¶ 3, Overt Acts, ¶¶ 3, and 83. Furthermore, Counts XIII and XIV of the Superseding Indictment describe the insurance fraud scheme for the Exit Tavern devised by Ron Williams and Leroy Lusk, defendant Carbone's co-conspirators. Superseding Indictment at 49–51. On February 27, 1979, the Superseding Indictment notified plaintiffs of their injury and thus, their claims against defendant Carbone. *Gibson,* 781 F.2d at 1344.

Plaintiffs' allegations do not toll the statute of limitations. First, although the district court struck those portions of the Superseding Indictment relating to the Carbone and Exit Tavern arsons, the district court did not acquit defendants of those charges, nor did the district court reach the merits of those claims. As the district court stated,

> [n]ow, the Carbone house fire, eliminating that from the list of overt acts—there may well have been arson by Mr. [John] Carbone of his own house. That's a matter for another time and possibly another court. It cannot, under any analysis of the evidence and the indictment, be a part of this proceeding.

Trial Transcript of May 21, 1979, *United States v. Carbone,* CR78–97T, lines 15–20. The court finds no preclusive effect from the district court's ruling on the Carbone fire.

Second, plaintiffs' allegation that a civil suit filed by John Carbone precluded investigation of defendant Joseph M. Carbone's activities is puzzling. Plaintiffs argue that John Carbone's suit warrants a finding of estoppel or of equitable considerations which toll the statute of limitation against defendant Joseph Carbone, but plaintiffs provide no grounds for this assertion. Therefore, the court finds that John Carbone's suit did not toll the statute of limitations.

Third, plaintiffs allege that defendant Carbone's continuing tortious conduct tolled the statute of limitations. The court finds to the contrary. Plaintiffs reassert that the conspirators, including defendant Carbone and the County defendants, coerced honest employees, agents and representatives to remain silent, depriving plaintiffs of valuable evidence. As discussed above, plaintiffs had independent notice of their claims against the County defendants and defendant Carbone by November 5, 1980. Plaintiffs fail to allege specific examples of affirmative fraudulent conduct which occurred after that date, and therefore, the court finds that plaintiffs' have not proven fraudulent concealment sufficient to toll the statute of limitations. *Gibson,* 781 F.2d at 1345.

THEREFORE, plaintiffs' motion for reconsideration is DENIED. Plaintiffs' claims under state law are DISMISSED. Plaintiffs' motion to set aside dismissal of Defendant Carbone is DENIED.

IT IS SO ORDERED.